**Jerome RUSSELL, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, Donald Selsky, Charles J. Scully, J.A. Dempskie, C. Artuz, Wilbur Wright, William McGinnis, L. Carey and Bobbie Jo LaBoy, Jointly, Severally and Individually, Respectively, Defendants.**

**No. 90 Civ. 1473 (RWS).**

United States District Court, S.D. New York.

Sept. 25, 1991.

Jerome Russell, pro se.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (William K. Sanders, Asst. Atty. Gen. of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiff Jerome Russell ("Russell") brought a *pro se* action under 42 U.S.C. § 1983 seeking monetary and injunctive relief against defendants Thomas A. Coughlin III ("Coughlin"), Commissioner of Correctional Services for New York State, Donald Selsky ("Selsky"), Director of Special Housing and Inmate Discipline for the New York State Department of Correctional Services ("DOCS"), Charles J. Scully ("Scully"), Superintendent of Green Haven Correctional Facility ("Green Haven"), Joseph A. Demskie ("Demskie"), Deputy Superintendent at Green Haven, Christopher Artuz ("Artuz"), Wilbur Wright ("Wright"), Captain at Green Haven, Michael McGinnis ("McGinnis"), Captain at Green Haven, L. Carey ("Carey"), and Bobbie Jo LaBoy ("LaBoy"), Sergeant at Green Haven alleging that they violated his right to due process of law under the Fifth and Fourteenth Amendments to the Constitution by depriving him of procedural safeguards at his Tier III hearings. Defendants Coughlin, Selsky, Scully, Demskie, Wright, McGinnis, and LaBoy (collectively, "Defendants") now move for summary judgment dismissing the complaint against them. For the reasons set forth below, the Defendants' motion is granted in part and denied in part.

### Prior Proceedings

Russell filed his complaint seeking injunctive and monetary relief pursuant to 42 U.S.C. § 1983 against defendants Selsky, Scully, Wright, and LaBoy in this court on March 6, 1990. On July 16, 1990, Russell amended his complaint, adding defendants Coughlin, Demskie, Artuz, McGinnis, and Carey, and increasing the amount of money damages sought. Defendants Selsky, Wright, Scully, LaBoy, Coughlin, Artuz, Demskie, and McGinnis filed answers to the amended complaint.[1] Defendants Coughlin, Selsky, Scully, Demskie, Wright, McGinnis, and LaBoy filed this motion for summary judgment on March 18, 1991, to which Russell has not responded.[2] On April 2, 1991, Defendants submitted a redacted copy of the transcript of the confidential testimony of LaBoy pursuant to an order of this court. This motion and the supporting documents from both sides were considered fully submitted as of May 3, 1991.

### The Facts

On October 29, 1989, Larry Monroe ("Monroe"), an inmate at Green Haven, was assaulted by inmates in the telephone room in the C-cell block. Sergeant LaBoy, who was on duty in C-cell block at the time, was called to investigate the incident. Based on conversations with most of the inmates in C-cell block and three confidential informants, LaBoy determined what had transpired and identified the assailants. One of the confidential informants disclosed the cell locations of the assailants and all three provided the nicknames of the inmates responsible and identified them when shown photographs. Russell was one of the inmates identified, and one of

---

1. As of this writing, it appears that named defendant Carey has not been served with an original or amended complaint.

2. Because defendants Artuz and Carey did not participate in this motion for summary judgment, this opinion does not dispose of the claims against them.

LaBoy's confidential informants reported that he was the initial aggressor.

On October 31, 1989, Sergeant LaBoy prepared and submitted an inmate misbehavior report ("MR") charging Russell with violations of DOCS disciplinary rules 100.10 (assault), 104.11 (violent conduct), and 116.10 (property damage). Captain McGinnis, serving as Review Officer, reviewed the MR to determine the appropriate charges and level of discipline. Russell was provided with a copy of the MR. Captain Wright was assigned to preside as Hearing Officer over Russell's Tier III hearing with respect to the charges ("Hearing I"). Hearing I was held on November 15, 1989.

Russell pleaded not guilty to all three charges. He requested that the four other inmates allegedly involved in the assault, Leonard Lott, James Martin, Cornell Fisher, and Kastine Chavez, and the two corrections officers on duty on C-cell block on the night of the incident be called to testify on his behalf. He also requested that the victim, Monroe, and the three confidential informants be called as witnesses.

Captain Wright heard Russell's testimony and the testimony of inmates Lott and Martin. Martin testified that, to his knowledge, Russell had nothing to do with the incident and that they were together watching a movie in the recreation room at the time. Lott testified that he was not in the area of the telephone room when the incident occurred but that, as a general matter, he was unaware of Russell having had any problems with any other inmates and that Russell had not "had a ticket" in three or four years. Wright accepted several letters from other inmates on Russell's behalf. Captain Wright called Monroe, but he refused to testify. Finally, Sergeant LaBoy testified in Russell's presence as to the results of her investigation and the information given to her by the confidential informants. During the hearing, Captain Wright asked her if the confidential informants were reliable. She responded that she had dealt with one of the informants for nine years, one for two years, and the third for one year. She reported that she had found all of them to be reliable.

Captain Wright refused Russell's request to call inmates Fisher and Chavez. He stated for the record that he was refusing Russell's request because "they had nothing substantial." In response to Captain Wright's inquiry as to the expected substance of Fisher's and Chavez's testimony, Russell stated that Fisher would probably testify that he was playing chess and had seen Russell watching television, and that Chavez, who was not an eyewitness, would testify only that he had not heard that Russell was involved in the incident.

Captain Wright also failed to call the two corrections officers to testify. Although there is no explanation for this failure on the record, Defendants' 3(g) statement establishes that he and Russell came to an agreement off the record that their testimony was unnecessary. Russell's submissions make no mention of any agreement to that effect.

Captain Wright found Russell guilty on the assault and violent conduct charges and not guilty on the property damage charge. He sentenced him to 180 days confinement in the Special Housing Unit ("SHU") and loss of various privileges for the same period. He prepared and gave Russell a copy of a written disposition containing a statement of the evidence relied upon and reasons for the disposition.

Russell appealed the disposition to Commissioner Coughlin on the grounds that Captain Wright had failed to conduct an *in camera* hearing to determine the reliability of the confidential informants, had denied him the right to call the two corrections officers as witnesses, and was not impartial.

The appeal was referred to and granted by defendant Selsky on February 1, 1990 for the reasons asserted by Russell. The record of Hearing I was ordered to be expunged and a new hearing was ordered to be commenced within seven days and completed within fourteen days.

On February 8, 1990, the MR was submitted to defendant Carey, who reviewed

the report. A copy of the MR was again delivered to Russell.

Defendant Captain McGinnis was assigned to preside as hearing officer over the rehearing ("Hearing II"), which was originally scheduled to begin on February 10 but was adjourned until February 12 because February 10 and 11, 1990 were Captain McGinnis's regular days off. According to Defendants, Captain McGinnis was unaware that he had reviewed the MR prior to Hearing I.

On February 12 and 14, 1990, Captain McGinnis conducted the rehearing. He explained the reasons for the adjournment, and advised Russell that he did not know why the prior hearing was reversed, that he had not reviewed any of the records concerning the prior hearing, and that he had no opinion on the case.

McGinnis accepted Russell's plea of not guilty. Russell testified that he was watching a video tape on television when the incident occurred in an adjacent room. Russell requested as witnesses inmates Fisher, Chavez, Martin, and Lott, as well as the same two corrections officers he had requested and been refused in Hearing I. Each of the inmates were called. Inmate Fisher testified that he had no knowledge of Russell's involvement in the assault on Monroe. Inmate Martin testified that he was watching television with Russell when the incident occurred and that Russell did not assault Monroe. Inmate Lott was called to testify but McGinnis dismissed him when he refused to answer his questions. Inmate Chavez testified that he was not an eyewitness but had heard that Monroe's injuries were the result of a slip-and-fall type accident.

In addition, Russell submitted documentary evidence consisting of a report of the incident dated October 29, 1989 by a corrections officer on duty, Alan Rara ("Rara"), stating that he observed a fight between four inmates, and a medical report of Monroe in which he stated that he lost consciousness and fell inside the telephone booth. McGinnis took the testimony of Sergeant LaBoy outside of Russell's hearing to protect the confidentiality of the informants. McGinnis questioned LaBoy as to the credibility and reliability of the confidential informants. LaBoy disclosed their names and the substance of their reports of the incident. She testified as to the basis for her belief in their credibility and reliability, such as the number of years and times she had used each, their rates of accuracy, and any possible biases they might have. She testified that none of the informants received anything in return for the information other than getting their "li[ves] put in jeopardy." Captain McGinnis did not interview the confidential informants themselves.

Captain McGinnis informed Russell that LaBoy had testified as to the identities and reliability of the informants. He related LaBoy's allegations and gave Russell the opportunity to refute them.

McGinnis found Russell guilty and sentenced him to 180 days in SHU and loss of 30 days of good time. He prepared a written statement of the disposition and evidence relied upon and gave a copy to Russell.

Russell again appealed, this time on the grounds that McGinnis was biased because he had reviewed the MR leading to Hearing I, that a rehearing was improper since the issues raised in the first appeal were not procedural, that McGinnis improperly denied him the right to call witnesses, and that McGinnis failed to assess independently the credibility of the confidential informants.

On April 24, 1990, Russell's appeal was granted and the disposition reversed on the ground that McGinnis had conducted the review of the MR.

Russell brought this action under 42 U.S.C. § 1983 alleging that Defendants, acting alone and in concert, violated his constitutional rights as follows:

(1) Captains Wright and McGinnis denied him the right to call witnesses at Hearings I and II;

(2) Captains Wright and McGinnis failed to conduct *in camera* hearings to assess independently the credibility and reliability of the confidential informants;

(3) all of the Defendants failed to commence plaintiff's rehearing within seven days after the disposition of Hearing I was reversed;

(4) Captain McGinnis was not a neutral arbiter because he served as Hearing Officer at Hearing II even though he had reviewed the MR prior to Hearing I;

(5) Sergeant LaBoy prepared the MR based upon confidential information; and

(6) Commissioner Coughlin and Selsky improperly ordered a rehearing after reversing the disposition of Hearing I.

Additionally, Russell asserted that each Defendant is "jointly and severally" liable for the acts of the others.

On March 18, 1991, Defendants filed this motion for summary judgment dismissing the complaint on the grounds that (1) Russell cannot prove, as a matter of law, that they violated his constitutional rights; (2) Russell cannot prove that certain Defendants participated in the actions upon which his claim is based; and (3) Defendants cannot be held liable because they have qualified immunity.

*Discussion*

1. The Standard for Summary Judgment

To grant summary judgment, the court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, the dispute about a material fact is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–49, 106 S.Ct. at 2510–11 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). To defeat the motion, however, the nonmoving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). This is particularly true for those issues on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

2. Russell's Failure to State a Claim Under § 1983

Defendants first contend that they are entitled to summary judgment because Russell cannot prove, as a matter of law, that they violated his constitutional rights. *Standard for Stating a Claim under § 1983*

To prevail on his § 1983 claim, Russell must prove that, acting under color of state law, the Defendants acted with deliberate indifference to his rights to deprive him of due process of law. *See Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). Moreover, Russell must prove that the individual defendant charged was personally involved in the wrongful conduct that deprived him of his constitutional rights. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987). Finally, proof that procedural requirements of state law were violated alone does not constitute a deprivation of due process since "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir.1990).

In the context of inmate disciplinary proceedings alleged to have deprived an inmate of a liberty interest, due process is satisfied if the hearing record discloses that the disposition was based upon " 'some evidence from which the conclusion of the administrative tribunal could be adduced....' the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–75, 86 L.Ed.2d 356 (1985) (quoting *United States ex rel. Vajtauer v. Commissioner of Im-*

*migration,* 273 U.S. 103, 106, 47 S.Ct. 302, 303, 71 L.Ed. 560 (1927)).

## Right to Call Witnesses

Russell claims that by denying his requests for certain witnesses at Hearings I and II respectively, Captains Wright and McGinnis violated his constitutional rights. With respect to Captain Wright, Russell has raised a material issue of fact, making summary judgment in Captain Wright's favor inappropriate. Because he has failed to raise an issue of fact with respect to his claim against McGinnis, Defendants' motion for summary judgment dismissing that claim is granted.

■ Russell has challenged Captain Wright's denial of his request to call as witnesses the two corrections officers on duty in C-cell block on the evening in question. No explanation for Captain Wright's refusal appears on the record of the hearing. According to Captain Wright, however, he and Russell came to an agreement off the record that the testimony of the officers was unnecessary. Russell makes no reference to this unrecorded agreement and, in fact, denied having any knowledge as to why these witnesses were not called.[3] *See* Transcript of Hearing II at 6.

Due process requires that an inmate facing disciplinary proceedings be given an opportunity to call witnesses and present documentary evidence in his defense. *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). This is not an unbounded right: prison officials may refuse to call witnesses if doing so would be "unduly hazardous to institutional safety or correctional goals," or if it would be irrelevant, unnecessary, or extend the hearing beyond reasonable limits. *Id.*

While a reviewing court must accord due deference to the decision of the administrator to exclude a witness, *see Freeman v. Rideout,* 808 F.2d 949, 954 (2d Cir.1986), *reh. denied,* 826 F.2d 194 (2d Cir.1987), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988), prison officials must

explain their denial of a request for witnesses, consistent with *Wolff,* either as part of the written record of the disciplinary proceeding, or later when the hearing is challenged. *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985); *Redding v. Fairman,* 717 F.2d 1105, 1114 (7th Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984).

No explanation for Captain Wright's decision to exclude the corrections officers as witnesses appears on the written record of the hearing. It is not apparent, therefore, how the testimony of these witnesses would have been "unduly hazardous to institutional safety or correctional goals," unnecessary, irrelevant, or beyond the reasonable scope of the hearing. It is impossible to determine whether Captain Wright exercised his broad discretion arbitrarily or whether he had a logical reason for his decision. *See Redding v. Fairman,* 717 F.2d at 1114. Because a material issue of fact exists, *see Gittens v. Sullivan,* 720 F.Supp. 40, 43 (S.D.N.Y.1989) (plaintiff held to have stated a claim under § 1983 where no explanation provided for failure to call witnesses) the motion for summary judgment dismissing this claim is denied.

■ In contrast, Captain McGinnis's refusal to allow inmate Lott to testify was sound under *Wolff* and *Ponte.* Lott's refusal to answer any questions posed by Captain McGinnis made it impossible to adduce any testimony from him within the reasonable limits of the hearing. Moreover, Captain McGinnis documented and provided plaintiff with a written explanation for his refusal to take Lott's testimony. Summary judgment on Russell's claim against Captain McGinnis for denying him witnesses therefore is granted.

## Failure to Conduct In Camera Hearings to Assess Credibility of Confidential Informants

Russell alleges that Captains Wright and McGinnis also violated his constitutional

---

**3.** Russell failed to submit any papers in opposition to Defendants' motion for summary judgment. However, because he is proceeding *pro se,* the usual requirements of Rule 3(g) and Fed.R.Civ.P. 56(e) are waived and this court shall liberally construe what submissions he has made. *See United States v. Becker,* 84 Civ. 2732 (MJL), slip op., 1986 WL 5627 (May 9, 1986).

rights by failing to conduct *in camera* hearings to determine the credibility of La-Boy's confidential witnesses. For the following reasons, the motion for summary judgment dismissing the claim against Captain Wright is denied. Summary judgment is granted dismissing the claim against Captain McGinnis.

■ In accordance with *Wolff*'s admonition that prison disciplinary hearings should not be conducted in an arbitrary manner, courts in this circuit generally require the hearing officer "somehow [to] assess the credibility and reliability of the confidential informant." *See Howard v. Wilkerson,* 768 F.Supp. 1002, 1008–1009 (1991); *Vasquez v. Coughlin,* 726 F.Supp. 466, 470–71 (S.D.N.Y.1989); *Gittens v. Sullivan,* 720 F.Supp. 40, 43 (S.D.N.Y.1989); *Wolfe v. Carlson,* 583 F.Supp. 977 (S.D.N.Y.1984). Although the Court of Appeals for the Second Circuit has yet to enunciate a test for determining whether a particular assessment passes constitutional muster, there has been ample treatment of this issue by other circuit courts of appeal and district courts within this circuit.

In *Kyle v. Hanberry,* 677 F.2d 1386 (11th Cir.1982), the Court of Appeals for the Eleventh Circuit held that:

> due process mandates that the [hearing officer] undertake in good faith to establish the informant's reliability, at least to its own satisfaction. There must be some information on the record from which a tribunal can reasonably conclude that the [hearing officer] undertook such an inquiry and, upon such inquiry, concluded that the informant was reliable.

*Id.* at 1390. While the court found *in camera* examination of the informant by the hearing officer to be one acceptable means of assessing reliability, it also concluded that other, less exacting procedures would suffice. For example, the court found that it would also be satisfactory if the witness proffering information provided by a confidential informant testified before the hearing officer as to the reasons for considering the informant reliable. *Id.*

The Third Circuit has set forth a similar, two-pronged, procedure to be followed by prison tribunals in using information obtained from confidential informants: there must be (1) factual information on the record from which the hearing officer can reasonably conclude that the informant was credible and (2) a written or reported statement of facts by the informant that establishes that the informant spoke with personal knowledge of the matters contained in the statement. *Helms v. Hewitt,* 655 F.2d 487, 502 (3d Cir.1981), *rev'd on other grounds,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

The Fifth Circuit upheld the use of information provided by confidential informants where the witness relaying the information testified before the hearing committee that he knew the informant, had used him in the past, and that the informant had first-hand knowledge of the incident reported. *Smith v. Rabalais,* 659 F.2d 539, 540–42 (5th Cir. 1981), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982). The Seventh Circuit requires simply that "there must be some indication of [the source's] reliability." *Dawson v. Smith,* 719 F.2d 896 (7th Cir.1983).

District courts within this circuit have applied similar tests, apparently gleaning from those set forth by these courts of appeal. *See, e.g., Gittens,* 720 F.Supp. at 43 (adopting *Kyle/Helms* tests); *Wolfe,* 583 F.Supp. at 982 (distilling from various tests principle that hearing officer must be given some means to evaluate truth or falsity of information obtained from confidential informants, such as informant's identity or reliability).

The procedure followed by Captain Wright falls short under any of the standards articulated above. His "independent assessment" of the credibility of the informants and the reliability of their information consisted of nothing more than eliciting a conclusion from Sergeant LaBoy that they were reliable. Absent some factual explanation on the record for that conclusion, however, it was an inadequate basis upon which Captain Wright could have independently assessed credibility. As the Eleventh Circuit held in *Kyle,* it is not enough for the hearing officer to know

that confidential sources have a past record of reliability; information must appear on the record explaining *why* they are reliable. *Kyle,* 677 F.2d at 1390.

The procedure followed by Captain McGinnis, on the other hand, passes the constitutional test. The transcript of the *in camera* hearing at which he took La-Boy's testimony shows that LaBoy disclosed to Captain McGinnis the names of the informants, reported that she previously knew and used the confidential informants for substantial periods of time, and specified the information that each gave her. She testified as to the reasons for her belief in their reliability, including their rates of accuracy as informants on previous occasions. She reported that they had personal knowledge and explained the circumstances under which she obtained the information about Russell from them.

These facts provided Captain McGinnis with a means to evaluate for himself the reliability of the confidential information. For this reason, summary judgment is granted dismissing this claim against him.

*Failure to Commence Hearing II Within Seven Days*

Russell asserts that all of the Defendants deprived him of due process by failing to commence his rehearing until eleven days after Selsky granted his appeal and reversed the disposition of Hearing I.

Due process requires that a disciplinary hearing be commenced within a reasonable time after an inmate is placed in administrative segregation. *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *Russell v. Coughlin,* 910 F.2d 75, 77–78 (2d Cir.1990). "What is considered a 'reasonable time' will depend upon the particular situation being examined." *Russell,* 910 F.2d at 78.

Defendants provided an explanation, both on the record and to Russell, for the time elapsed between the disposition of his appeal and the commencement of the rehearing. Russell, on the other hand, has not presented this court with any material facts to establish why this period was unreasonable under the circumstances. There being no genuine issue to be determined by a trier of fact, Defendants' motion for summary judgment on this claim is granted.

*Bias and Prejudgment*

Russell claims that it was a violation of due process for Captain McGinnis to preside as hearing officer over Hearing II because he had served as reviewing officer of the MR prior to Hearing I. He contends that Captain McGinnis's prior involvement in the case predisposed him to a finding of guilt. There is no dispute that Captain McGinnis served a dual role or that Selsky reversed his disposition of Hearing II because DOCS regulations prohibit a person from acting both as review and hearing officer.

Due process requires that the hearing officer is unbiased and has not predetermined the outcome of the case. *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). Because of the special characteristics of the prison environment, however, due process is not necessarily violated if a hearing officer's impartiality is encumbered by some conflicts of interest that might rise to a constitutional magnitude in other contexts. *Id.* In order to defeat a motion for summary judgment, a plaintiff-inmate must "be armed with [something] more than conclusory allegations of bias and prejudgment." *Id.* at 47.

Although Russell correctly asserts that McGinnis violated DOCS regulations by acting as both review and hearing officer, *see* 7 NYCRR § 254.1, absent some proof of actual bias, this violation of state law does not amount to a constitutional infraction. Even assuming that Captain McGinnis's claim that he had no recollection that he reviewed Russell's MR is disingenuous, Russell has failed to present any evidence that would permit the trier of fact to infer bias in the constitutional sense, such as evidence that he suppressed evi-

dence, distorted testimony, or failed to inform the inmate of evidence against him, *see Francis*, 891 F.2d at 46. On the contrary, the transcript of the hearing demonstrates that Captain McGinnis took pains to conduct the hearing in a neutral fashion. He called each and every witness Russell requested, allowed him to submit documentary evidence, gave him a full opportunity to respond to the charges against him, and repeatedly resisted Russell's attempts to revisit Hearing I "so it doesn't prejudice me or anyone else." Transcript of Hearing II at 4–5.

Because Russell has failed to present this court with any material fact upon which a trier of fact could decide in his favor, summary judgment is granted and this claim dismissed.

*Preparation of MR Based on Reports of Confidential Informants*

 Russell claims that LaBoy violated his constitutional rights by preparing an MR based on information obtained from confidential informants. There is no established law prohibiting the preparation of an MR based on information supplied by confidential informants. Summary judgment is thus granted dismissing the claim against LaBoy.

*Order for Rehearing after Reversal of Hearing I*

Russell accuses Coughlin and Selsky of violating his rights by ordering a rehearing after the reversal of Hearing I. The DOCS regulations themselves provide that an appropriate disposition of a matter on appeal is to reverse and order a new hearing, *see* 7 NYCRR § 254.8(d), giving rise to the presumption that this procedure did not violate due process. For this reason, summary judgment is granted dismissing this claim.

3. Joint and Several Liability

 Having granted summary judgment dismissing Russell's claims against all of the individual Defendants except Captain Wright, it is unnecessary to address the liability of each of the other Defendants for acquiescing in their allegedly unlawful acts. Furthermore, there is no basis for permitting this action to go forward against the other Defendants for acquiescence in the acts of Captain Wright.

It is well settled that absent some personal involvement in the allegedly unlawful conduct, a person cannot be held liable under § 1983. *Gill*, 824 F.2d at 196. Supervisory personnel may be held accountable for the constitutional violations of their subordinates upon proof that they (i) were directly involved in the wrongdoing; (ii) failed to remedy a wrong after learning of it through report or appeal; (iii) created or allowed a policy under which the violation occurred; or (iv) were grossly negligent in managing the subordinates who caused the wrongdoing. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986).

According to the undisputed facts, none of the Defendants participated in any meaningful respect in the actions of the others. The one possible exception is Selsky, who assigned Captain McGinnis as hearing officer in Hearing II. Even in that case, however, Russell has presented no evidence that Selsky, either intentionally or with gross negligence, assigned an officer who had had previous involvement in Russell's case. Mere negligence does not constitute a constitutional injury. *See Davidson*, 474 U.S. at 347, 106 S.Ct. at 670.

4. Qualified Immunity

Having granted summary judgment dismissing all but the claims against Captain Wright arising out of his denial of requested witnesses and use of confidential informants' evidence, consideration of qualified immunity is necessary only with respect to that Defendant.

 Under the doctrine of qualified immunity, government officials are protected from liability for actions that are discretionary in nature and do not violate clearly established statutory or constitutional

rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In the Second Circuit, a defendant is entitled to qualified immunity if he can show that:

"it was not clear at the time of the official act that the interest asserted by plaintiff was protected by a federal statute or the Constitution;" or that "it was not clear at the time of the acts at issue that an exception did not permit those acts;" or that "it was objectively reasonable for [the official] to believe that his acts did not violate [plaintiff's] rights."

*Krause v. Bennett*, 887 F.2d 362, 368 (2d Cir.1989) (quoting *Robison v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987).

■ In addressing precisely the issue of whether qualified immunity protects a hearing officer from liability for excluding a witness in violation of *Wolff*, other courts in this district have held in the negative. The *Gittens* court, for example, wrote that "[t]he explicit requirements of *Wolff* are clearly established constitutional rights. Thus, defendant [ ] may not avail himself of the doctrine of qualified immunity with respect to his failure to call [a requested witness.]" *Gittens*, 720 F.Supp. at 43. Following *Gittens*, qualified immunity does not shield Captain Wright from liability for excluding witnesses from Hearing I in violation of *Wolff*.

■ Whether one in the position of Captain Wright is qualifiedly immune for his failure to assess the credibility of confidential informants is a question that has not been directly addressed by the Supreme Court or the Second Circuit. Courts within this circuit have held both ways. *Compare, e.g., Vasquez*, 726 F.Supp. at 472 (no qualified immunity because right to independent determination of reliability was matter of established law in 1986) *and Howard v. Wilkinson*, 768 F.Supp. 1002 (1991) ("clearly established" by October of 1984 that hearing officer's failure to assess

credibility of hearsay information violates due process) *with Gittens*, 720 F.Supp. at 43–44 (qualified immunity applies because rule not clearly established in this circuit or by decisions of Supreme Court).

In this case, *Vasquez* provides the preferable approach. *Wolff* has now been good law for seven years and has been followed within this circuit. While the Court of Appeals for the Second Circuit has not spoken directly on this issue, that court has found that a right was "clearly established" where three other circuit courts had so held and its own decisions lent support to that conclusion. *See Weber v. Dell*, 804 F.2d 796, 804 (2d Cir.1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). Taken together, the decisions of the four circuit courts cited above and *Wolff* support the conclusion that the right to an independent assessment of credibility by the hearing officer was clearly established by 1989.

Moreover, Wright's own perfunctory, two-question inquiry about the informants suggests that he was *aware* of the necessity to assess the informants' credibility. Finally, a June 1988 memorandum circulated by Commissioner Coughlin articulating a "guideline" for hearing officers when considering confidential information seals this court's belief that this right was clearly established at the time of Hearing I. The memorandum states that:

2. Hearing officers must make their own independent assessment of the reliability of the confidential information. Therefore, an investigation surrounding the confidentiality should be as thorough and detailed as possible to enable this independent evaluation. Issues such as reliability of the informant's previous information, possibility of ulterior motives for providing the information, and availability of corroboration evidence should be considered.

. . . .

4. If the hearing officer determines not to interview the confidential witness personally, the hearing record should con-

tain independent evidence indicating that the informant was credible and the information is reliable. For instance, the hearing officer may interview an employee who is able to testify about the details of his/her investigation with specificity so that the hearing officer has a basis from which to make his/her *own independent determination of credibility.* Hearing officers should not rely on a third party assessment of credibility.

Def.Aff.Ex. 11 at 2 (emphasis in original).

Given that the right to an independent assessment of the credibility of confidential informants was clearly established at the time of Hearing I, Captain Wright is not entitled to qualified immunity from liability for his violation of that right.

*Conclusion*

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to the claims against Coughlin, Selsky, Scully, Demskie, McGinnis, and LaBoy, and with respect to the claim against all the Defendants for "joint and several" liability for the acts of the others. Summary judgment is denied with respect to the claims against Wright.

It is so ordered.