962 F.2d 145
 Joseph SCOTT, Plaintiff-Appellant,
v.
Walter R. KELLY, A. Hall, D. Selsky, Thomas A. Coughlin,
III, S. Kibler, Correction Officer, Kirkpatrick, Correction
Officer, Helax, Correction Officer, R.D. Coffey, Correction
Officer, Defendants-Appellees.
 No. 397, Docket 90-2567.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 31, 1991.
Decided April 15, 1992.
 
 Douglas Young Peters, New York City (Willkie Farr & Gallagher, Richard L. Klein, of counsel), for plaintiff-appellant.
 Martin A. Hotvet, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen. of State of N.Y., Peter H. Schiff, Deputy Sol. Gen., Peter G. Crary, Asst. Atty. Gen., of counsel), for defendants-appellees.
 Before: OAKES, Chief Judge, LUMBARD and ALTIMARI, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Joseph Scott appeals from summary judgment entered in the District Court for the Western District of New York, David G. Larimer, Judge, dismissing his claims of civil rights infringements at the New York State Department of Correctional Services ("DOCS") Attica Facility. Scott alleged denial of due process for failure to call witnesses at a disciplinary hearing, for reinstatement of a vacated sentence, and for detention in restrictive confinement beyond a discretionary early release date. We affirm.
 
 
 2
 On April 8, 1986, Scott assaulted another inmate, resulting in a misbehavior report for disciplinary action. After a hearing, Attica Deputy Superintendent Albert Hall sentenced Scott to 120 days in keeplock restrictive confinement and loss of six months good time credit. On April 17, another misbehavior report charged Scott with disobeying a direct order and failing to comply with rules. Again Hall found Scott guilty and issued a suspended sentence of 60 days in keeplock.
 
 
 3
 On May 27, Scott reacted violently to a frisk request and was charged with assault, violent conduct, use of threatening language, failure to comply with a direct order, interference with facility employees, and refusal to comply with procedure. At the hearing on these charges, Scott asked Hall to call two inmates as witnesses. Because Scott refused to testify himself, Hall stated on the record: "there's no point in my calling [the] witnesses if I do not have questions to ask them [o]n Scott's behalf." Hall found Scott guilty and reinstated the suspended sentence of 60 days in keeplock.[1]
 
 
 4
 Scott appealed all of the rulings to Donald Selsky, DOCS Director of Special Housing and Inmate Discipline. Selsky affirmed the disposition of the April 8 charges but dismissed one charge from April 17, thereby vacating the suspended sentence. Subsequently, Selsky reviewed the punishment for Scott's violent conduct on May 27 and affirmed the sentence of 60 days in keeplock.
 
 
 5
 Scott then applied to Deputy Superintendent Hans Walker to request a discretionary early release from keeplock. In a memorandum dated September 23, Walker ordered Scott's release effective September 26. Scott was not released then because Walker's order did not reach Scott's prison guards until September 30, apparently due to administrative delay in processing the order. Meanwhile, on September 29, Scott's behavior led to charges of violent conduct, use of threatening language, and failure to comply with an order. As a result, he was kept in keeplock until October 5 and eventually received another suspended sentence.
 
 
 6
 On September 13, 1986 and on January 20, 1987, Scott brought two different actions under 42 U.S.C. § 1983, alleging that segregation in keeplock violated his right to due process. On April 28, 1987, Judge Telesca consolidated the cases, and the consolidated action was transferred to Judge Larimer by order dated March 30, 1988. On the basis of uncontested facts, both Scott and the defendants moved for summary judgment. On November 15, 1990, Judge Larimer held that Scott had failed to show any evidence of constitutional violation and granted defendants' motion for summary judgment.
 
 
 7
 Scott claims that Hall's failure to call witnesses at the hearing on the May 27 charges denied him due process, even though Scott himself refused to testify at the hearing. It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable. See Wolff v. McDonnell, 418 U.S. 539, 566-67, 94 S.Ct. 2963, 2980, 41 L.Ed.2d 935 (1974). Furthermore, "a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity." Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir.1991). Cf. Ponte v. Real, 471 U.S. 491, 495-500, 105 S.Ct. 2192, 2195-98, 85 L.Ed.2d 553 (1985) (officials not required to justify decision at the time of disciplinary hearing, but may give reasons at later court challenge).
 
 
 8
 Scott did not advise Hall what the testimony of the witnesses would be. Thus, Hall had no reason to believe that the testimony would be relevant or that it would affect his decision.[2] In prison disciplinary proceedings, unlike court trials, officials may draw an adverse inference from an inmate's failure to testify. Baxter v. Palmigiano, 425 U.S. 308, 316-20, 96 S.Ct. 1551, 1557-59, 47 L.Ed.2d 810 (1976). In this case, Scott's refusal to testify created such a strong adverse presumption as to render further testimony irrelevant. Cf. Patterson v. Coughlin, 905 F.2d 564, 568-69 (2d Cir.1990) (If defendant "would have been found guilty ... even if his witnesses had been called, his confinement ... must be considered a justified deprivation of liberty, not a deprivation caused by the State's failure to permit him to call those witnesses.").
 
 
 9
 Scott had a long history of prison violence and of unsuccessful administrative appeals after each disciplinary action taken against him. When given the chance to testify, Scott failed to raise any questions requiring additional testimony. Because Scott introduced no evidence to overcome the presumption of deference to Hall's decision, summary judgment was properly entered on this claim as a matter of law.
 
 
 10
 Next, Scott asserts that Selsky reinstated a vacated sentence, depriving him of due process. Hall sentenced Scott to 60 days in keeplock after finding him guilty of the May 27 charges of verbal abuse, assault, physical threats, refusal to obey orders, and disruption requiring physical restraint. At the time of sentencing, Hall clearly stated that he meant to "impress Scott with the seriousness of his act[s]" by imposing a term of keeplock confinement. Though technically Hall reinstated a suspended sentence for the April 17 charges, the record leaves no question that the term in keeplock was intended to punish Scott for misbehavior on May 27.
 
 
 11
 Scott now complains that Selsky's approval of this disposition had the effect of reinstating a vacated sentence. In fact, however, Selsky merely approved the determination that Scott's misbehavior on May 27 merited 60 days in keeplock. After vacating the sentence for the April 17 charges, Selsky could have asked Hall to resentence Scott for the May 27 incident. Instead, Selsky found reconsideration unnecessary, and the record supports that finding.
 
 
 12
 Finally, Scott maintains that detention in keeplock after September 26 denied him due process. He did not provide the prison guards with a copy of the release order, however, until Friday, September 26, 1986. The guards could not verify its authenticity over the weekend, and, given the potential for inmate fraud, it was prudent to hold him in keeplock until they could do so on September 29. Cf. Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize [prohibited] conduct," including conduct regarding conditions of confinement). In the interim, Scott's continued violent behavior amply justified revocation of the discretionary early release.[3]
 
 
 13
 Affirmed.
 
 OAKES, Chief Judge, dissenting:
 
 14
 I respectfully dissent.
 
 
 15
 As I review the facts, Officer Hall, after Scott declined to plead to the charges read, ordered him taken out of the room and then never called the witnesses--inmates Gasken, locking in CE19, and Samuels, locking in CE8--that Scott had asked him to call on his behalf. Hall's statement for the tape says that since Scott refused to cooperate and complete the hearing the witnesses were not called "as there is no point in my calling those witnesses if I do not have questions to ask them in Scott's behalf." But here the charge against Scott was that two correction officers returning Scott from the yard to his cell had ordered him to assume the "pat/frisk" position and Scott had placed his hands on the wall but while moving his feet had refused to take a step backwards or spread his legs, and subsequently had not immediately put his hands behind his back in walking towards his cell and indeed, after stepping into his cell, had turned and swung towards the CO with a clenched fist. It is an incident that could be described rather handily by an observant witness in one of the other cells. I simply do not think that an inmate loses his right to have witnesses merely because he refused to reply to the charges against him, especially when DOCS Reg. 254.6(a)(3) (1983) provides, as to a disciplinary hearing, that "the inmate when present may reply orally to the charge." It does not say that he must do so.
 
 
 16
 It seems to me that the majority opinion proceeds under the mistaken premise that "Scott did not advise Hall what the testimony of the witnesses would be." True, but on my reading of the transcript, he was not asked why they were being called or for information as to what they would testify to. He was asked to reply to the charges made by the correction officer. That is what he declined to answer, and the prison regulations show he had a right to do just that.
 
 
 17
 That is precisely why the case relied on by the state defendants, Bostic v. Carlson, 884 F.2d 1267, 1274 (9th Cir.1989), and why Ramer v. Kerby, 936 F.2d 1102 (10th Cir.1991), are inapposite. In Bostic the regulations required that witnesses "and their likely testimony be listed" and the inmate was questioned concerning the testimony to be given by his witnesses, 884 F.2d at 1274. In Ramer official policy at the prison prohibited inmates from calling staff members as witnesses at disciplinary hearings and those were the witnesses that the inmate had called. Here, there was no prohibition on calling of other prison inmates as witnesses.
 
 
 18
 While Correction Officer Hall in our case might have declined to call witnesses if he thought it would present a danger, he neither stated any such reason nor even suggested such a reason. Rather, he flatly stated that he declined to call the witnesses because Scott would not reply to the charges. To me, this was improper.
 
 
 
 [1]
 After Scott began serving the reinstated sentence, a fourth incident led to a misbehavior report charging him with the failure to obey a direct order. He was found guilty and received another suspended sentence. Scott appealed and the disposition was affirmed
 
 
 [2]
 We must defer to the judgment of prison officials in balancing prisoners' rights against penological interests, absent a showing of abuse of discretion. See, e.g., Ponte, 471 U.S. at 499, 105 S.Ct. at 2197; Wolff, 418 U.S. at 566, 94 S.Ct. at 2979
 
 
 [3]
 Furthermore, the early release order was purely discretionary. Thus, it is doubtful whether Scott had a constitutionally protected liberty interest in the release. Cf. Hewitt v. Helms, 459 U.S. 460, 469, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983) (constitutional protection extends only to statutory or regulatory entitlement)