Jerome RUSSELL, Plaintiff–Appellant,

v.

Donald SELSKY, Commissioner Designee of Corrections; Charles C. Scully, Superintendent; Wilbur Wright, Captain; Bobbie Jo LaBoy, Sergeant; Thomas A. Coughlin, III; J.A. Dempskie; C. Artuz; William McGinnis; and L. Carey, Defendants–Appellees.

No. 1832, Docket 94–2068.

United States Court of Appeals, Second Circuit.

Argued June 24, 1994.

Decided Sept. 7, 1994.

Michael E. Salzman, New York City (Karen A.B. Berman, Hughes Hubbard & Reed, of counsel), for plaintiff-appellant.

Jeffrey I. Slonim, Asst. Atty. Gen., New York City (G. Oliver Koppell, Atty. Gen., Martha O. Shoemaker, Asst. Atty. Gen., of counsel), for defendants-appellees.

Before: FEINBERG and MAHONEY, Circuit Judges, and KRAM, District Judge.*

MAHONEY, Circuit Judge:

Plaintiff-appellant Jerome Russell appeals from two orders entered January 3, 1992 in the United States District Court for the

Southern District of New York, Robert W. Sweet, *Judge.* Russell brought this action pursuant to 42 U.S.C. § 1983 claiming violation of his constitutional rights in the conduct of disciplinary hearings at the Green Haven Correctional Facility ("Green Haven").

In its initial opinion dated September 25, 1991, *Russell v. Coughlin,* 774 F.Supp. 189 (S.D.N.Y.1991) (*"Russell I "*), which was entered as an opinion and order on January 3, 1992, the district court granted summary judgment in favor of most of the defendants other than defendant-appellee Wilbur Wright.[1] The district court denied summary judgment regarding Russell's claims that Wright unconstitutionally: (1) excluded witnesses from Russell's initial disciplinary hearing, *id.* at 195; and (2) failed to make an independent assessment of the credibility of confidential informants who provided evidence against Russell at that hearing. *Id.* at 195–97. The court also ruled that Wright was not entitled to qualified immunity regarding either claim. *Id.* at 198–200.

Wright and C. Artuz moved for reargument. In an opinion dated December 31, 1991, *Russell v. Coughlin,* 782 F.Supp. 876 (S.D.N.Y.1991) (*"Russell II "*), which was also entered as an opinion and order on January 3, 1992, the district court granted Wright's motion for reargument to the extent of granting summary judgment dismissing the claim that Wright unconstitutionally excluded witnesses from Russell's initial disciplinary hearing. *Id.* at 880–81.

Wright took an interlocutory appeal from the district court's denial of qualified immunity with respect to the remaining claim re-

garding his credibility assessment of confidential informants. We initially reversed on the basis that Russell "was subject only to a valid administrative confinement pending his hearing and appeal and suffered no deprivation of a protected liberty interest." *Russell v. Scully,* 15 F.3d 219, 221 (2d Cir.1994) (*"Russell III "*). On rehearing, we modified our opinion, but persisted in reversal on the basis that Wright was entitled to qualified immunity with respect to the claim regarding the confidential informants. *See id.* at 223–24.

At this juncture, Russell had no remaining claims pending against any defendant. Accordingly, on February 2, 1994, Russell appealed to this court from the orders entered January 3, 1992. On February 28, 1994, Judge Sweet entered an order closing Russell's action in the district court.

We affirm the dismissal of Russell's remaining claims.

## Background

In view of the factual background provided by *Russell I, II & III,* familiarity with which is assumed, we summarize only the facts pertinent to this appeal.

On October 29, 1989, an inmate at Green Haven, Larry Monroe, was assaulted. After investigating the incident, corrections officer Bobbie Jo LaBoy filed an inmate misbehavior report that attributed the assault to Russell. Captain Michael McGinnis[2] served as the review officer responsible for determining the level of disciplinary proceeding to be conducted with respect to the offenses with which Russell was charged.[3] The charges

---

1. All of the defendants moved for summary judgment except L. Carey, who had not been served with an original or amended complaint. *See* 774 F.Supp. at 191 n. 1. The district court did not grant summary judgment in favor of C. Artuz in *Russell I,* but did so in *Russell II,* described *infra. Russell I* granted summary judgment in favor of all defendants except Carey, Artuz and Wright.

2. McGinnis is incorrectly identified in the caption as William McGinnis.

3. The relevant functions of a review officer are described in N.Y. Comp.Codes R. & Regs. tit. 7, § 251–2.2(a)–(c), as follows:
    (a) The review officer shall receive at least once daily, all misbehavior reports issued at the facility.

(b) The review officer shall review such reports and considering the seriousness of the alleged violation of the standards of inmate behavior, refer such reports to the appropriate disciplinary body for action as follows:
    (1) Where the violation, if substantiated, would warrant only a penalty of loss of recreation for up to and including 13 days and including the loss of privileges, for a period up to and including 13 days, other than correspondence and visitation privileges, the report shall be referred to the violation officer.
    (2) Where the violation, if substantiated, would warrant only a penalty of loss of privi-

brought against Russell were assault, violent conduct, and property damage in violation of New York State Department of Corrections ("DOCS") disciplinary rules. The case was referred for a superintendent's hearing. *See supra* note 3.

On November 15, 1989, Wright presided over a hearing ("Hearing I") of the charges against Russell. Wright found Russell guilty of assault and property damage. He sentenced Russell to 180 days confinement in the Special Housing Unit ("SHU") and loss of various privileges for the same period. During the hearing, Wright declined to call as witnesses, *inter alia*, two inmates, Cornell Fisher and Kastine Chavez, and two corrections officers requested by Russell. In his statement pursuant to S.D.N.Y.Civ.R. 3(g) in support of his motion for summary judgment, to which Russell made no response, Wright asserted that:

> Captain Wright refused to call inmates Fisher and Chavez, despite [Russell's] request, since [Russell] had stated on the record that Fisher's testimony would merely be cumulative and that Chavez's testimony had no probative value.... Captain Wright discussed with [Russell] off the record his request that the two correction officers be called as witnesses, and they agreed that their testimony was not necessary.

On administrative appeal, Donald Selsky, Commissioner Designee of Corrections, reversed the finding of Russell's guilt and ordered a new hearing. The reversal was based upon, *inter alia*, Wright's failure "to call certain witnesses" requested by Russell. Thus, a second hearing concerning the Monroe assault was held ("Hearing II"), at which McGinnis presided. McGinnis found Russell guilty, and sentenced him to 180 days in the SHU and loss of thirty days of good time credit.

On administrative appeal from this hearing, Selsky reversed the finding of guilt on the ground that McGinnis served both as the review officer in the case and as the hearing officer during Hearing II. Under N.Y.Comp.Codes R. & Regs. tit. 7, §§ 251–2.2(e) and 254.1, a corrections officer may not serve both as review officer and hearing officer in the same case.[4] By that time, Russell had served 171 days of his original sentence. Selsky declined to order a third hearing.

On this appeal, Russell contends that summary judgment should not have been entered on his claims that: (1) Wright denied him due process by excluding witnesses requested by Russell at Hearing I; and (2) McGinnis violated due process by presiding at Hearing II after previously serving as review officer with respect to Russell's violations.

### Discussion

The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Shabazz v. Coughlin,* 852 F.2d 697, 700 (2d Cir. 1988) (collecting cases). As we stated in *Russell III,* "we look to the caselaw of the Supreme Court and this circuit" in determining whether any defendant-appellee violated

leges up to and including 30 days, and including confinement to a cell or room (keeplock) for a period up to and including 30 days, the misbehavior report shall be forwarded to the disciplinary hearing officer for appropriate action.

(3) Where the violation, if substantiated, would warrant imposition of a penalty beyond that which may be imposed at a disciplinary hearing, the misbehavior report shall be forwarded to the superintendent for designation of a hearing officer to conduct a superintendent's hearing.

(c) The review officer may dismiss any misbehavior report which fails to state a valid charge, or may return it to be rewritten.

4. Section 251–2.2(e) provides that: "The review officer shall not act as a hearing officer in any proceeding arising from misbehavior reports which he has reviewed." Section 254.1 provides in pertinent part that: "The following persons shall not be appointed to conduct [a superintendent's hearing]: a person who actually witnessed the incident; a person who was directly involved in the incident; the review officer who reviewed the misbehavior report, or a person who has investigated the incident."

Russell's clearly established statutory or constitutional rights. 15 F.3d at 223 (citing *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989)); *see also Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990).[5] We proceed to assess both of Russell's claims of error against this standard.

### A. *The Failure to Call Witnesses Requested by Russell.*

The basic standards regarding a prisoner's right to call witnesses at a disciplinary hearing were articulated in *Wolff v. McDonald,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), as follows:

> We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators.... Prison officials must have the necessity discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

*Id.* at 566, 94 S.Ct. at 2980; *see also Baxter v. Palmigiano,* 425 U.S. 308, 320–21, 96 S.Ct. 1551, 1558–59, 47 L.Ed.2d 810 (1976).

■ Russell argues that Wright bears the burden of establishing the basis for the exclusion of witnesses, citing *Ponte v. Real,* 471 U.S. 491, 499, 105 S.Ct. 2192, 2197, 85 L.Ed.2d 553 (1985), and *Scott v. Kelly,* 962 F.2d 145, 146–47 (2d Cir.1992). *Ponte* holds

only that some explanation must be provided either at the time of the disciplinary hearing or subsequently in court, and perhaps only *in camera* in the latter instance. *See* 471 U.S. at 498–99, 105 S.Ct. at 2196–97. *Scott* simply noted the option provided by *Ponte, see Scott,* 962 F.2d at 147, and also observed that " 'a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity.' " *Id.* (quoting *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991)); *cf. Wright v. Smith,* 21 F.3d 496, 499 (2d Cir. 1994) (state procedures concerning number of witnesses allowed in prison disciplinary hearing do not create constitutionally protected liberty interest).

Furthermore, Wright provided an explanation in this case in the form of a Rule 3(g) statement. Russell made no response to that statement, despite an explicit notice by defendants-appellees, following the "sensible course" that we approved in *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988), that he was required to do so. The district court accordingly ruled that: "Treating Wright's explanation for his exclusion of these witness[es] as true in the absence of any contest by Russell, Wright has provided a logical reason for his decision, leaving no genuine issue for trial as to this fact." *Russell II,* 782 F.Supp. at 880 (citing *Ponte,* 471 U.S. at 497, 105 S.Ct. at 2197). We perceive no basis to regard this ruling as an abuse of the court's discretion.

In addition, the following colloquy at Hearing I indicates that Wright reasonably regarded the proffered testimony of Fisher and Chavez as duplicative or non-probative:

> WRIGHT: Alright, for the record I'd like to indicate at this time that inmate Fisher, 86A6912 and Chuves [sic] 84A2179 ah, were not called to testify, ah, the decision was based on the fact that they had nothing substantial. Let me ask you again, do they have anything to offer besides the fact that you weren't there that you weren't a participant.

---

5. The plaintiff-appellee in the cited case is not the same person as the plaintiff-appellant in this case.

RUSSELL: Well Fisher was there, the C.O. didn't call him because he was upstairs.

WRIGHT: Alright, but would his testimony be any different from the two individuals I called.

RUSSELL: His testimony would probably be that he was playing chess and he seen me watching T.V.

WRIGHT: So you're saying basically that he would say that you were not a participant. Or he was accused of being a participant too.

WRIGHT: Alright, Chuves [sic].

RUSSELL: * * * *

WRIGHTS: Alright, what would have been the nature of his testimony.

RUSSELL: I don't know what he would say.

WRIGHT: You know, the fact, I presume the fact

.    .    .    .    .

RUSSELL: I just wanted to ask him, because he wasn't there, I just wanted to ask him did he hear anything about me jumping anybody * * *

WRIGHT: So he wasn't an eyewitness to what happened. I see no reason to call Fisher or Chuves [sic]. . . .

Wright subsequently added "that testimony of inmate Fisher and Chuves [sic] would be redundant."

We note that Fisher and Chavez testified in Hearing II. Fisher asserted that Russell was watching television at the time when the altercation that resulted in Monroe's injury occurred. This testimony was helpful to Russell, but duplicated that provided by other witnesses whom he requested. Chavez testified that he "didn't know anything about what happened because he wasn't in the block at the time."

Russell argues that because he presented an alibi defense, the Fisher and Chavez testimony could not logically be cumulative. He contends that by finding Russell guilty, Wright must have disbelieved the testimony of the alibi witnesses that did testify, and thus to the extent that Fisher or Chavez might have more credibly confirmed the alibi, their testimony could not be merely additive to the prior testimony deemed not credible.

This argument is unavailing. Wright's statement that he viewed the testimony as cumulative indicates that Wright had heard testimony substantially identical to that potentially offered by Fisher and Chavez, and was unpersuaded by that testimony in the face of conflicting evidence. The logical implication of Russell's argument is that a hearing officer would have to continue calling any witnesses suggested by a defendant in a disciplinary proceeding, theoretically *ad infinitum*, for so long as he was unpersuaded by the defense witnesses that he had already heard. We decline to adopt this suggested rule.

We conclude that Wright did not violate any clearly established constitutional or statutory right of Russell's in failing to call the suggested witnesses, and that summary judgment was properly awarded dismissing this claim.

B. *Service by the Same Officer as Review Officer and Hearing Officer.*

■ There is no dispute that McGinnis served both as the review officer in Russell's case prior to Hearing I, in which capacity he reviewed the initial inmate misbehavior report and assessed the nature of the charges to be brought and the level of disciplinary proceeding to be conducted, and as the hearing officer in the case during Hearing II. Russell contends that as a result, Hearing II was inherently biased against him, denying him due process.

The district court noted that McGinnis violated DOCS regulations by serving in these two roles, *see supra* note 4, but ruled that "absent some proof of actual bias, this violation of state law does not amount to a constitutional infraction." *Russell I*, 774 F.Supp. at 197. The district court concluded that Russell had presented no evidence of such bias, and awarded summary judgment dismissing this claim. *Id.* at 197–98.

■ Due process requires that a prison disciplinary hearing be impartial. *See McKinnon v. Patterson*, 568 F.2d 930, 934 n. 3 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). However, it is not clearly established that allow-

ing a review officer to serve subsequently as a hearing officer in the same case necessarily curtails constitutionally mandated impartiality.

Russell suggests that *Wolff* stands for the proposition that once a prison guard acts as a review officer, he may not serve as a hearing officer. *See Wolff,* 418 U.S. at 573 n. 20, 94 S.Ct. at 2982–83 n. 20 (citing *Clutchette v. Procunier,* 497 F.2d 809 (9th Cir.), *modified,* 510 F.2d 613 (9th Cir.1974), *rev'd on other grounds sub nom. Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), *vacated in part on remand sub nom. Clutchette v. Enomoto,* 536 F.2d 305 (9th Cir.1976); *Braxton v. Carlson,* 483 F.2d 933 (3d Cir.1973); and *United States ex. rel. Miller v. Twomey,* 479 F.2d 701 (7th Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974)). First, *Wolff* does not so hold, but only compiles various circuit court opinions on various aspects of prison disciplinary hearings, noting that "[t]he Court[s] of Appeals, which have ruled on procedures required in prison disciplinary proceedings, have been split." *Id.* at 572 n. 20, 94 S.Ct. at 2982 n. 20. Second, none of these cases are Second Circuit or Supreme Court cases that would impact decisively upon the qualified immunity question presented by the instant case. Finally, only *Clutchette* advances the view that a reviewing officer's participation might taint the impartiality of a hearing tribunal. *See* 497 F.2d at 820.

*Braxton* and *Miller* focus upon personal involvement in, or investigation of, the events to be adjudicated, categories with a conflict potential much higher than that of a reviewing officer. *Braxton* addresses its only concern about impartiality to hearing officers who have either witnessed or investigated the incident at issue. *See* 483 F.2d at 941. *Miller* mandates only that correctional officers who reported the alleged infraction not participate in its adjudication. *See* 479 F.2d at 716. The "assigning" function of a review officer (*see supra* note 3), by contrast, is akin to the role of a judicial officer who performs preliminary functions, which would not ordinarily bar such an officer from conducting a subsequent hearing on the merits.

Russell also invokes the DOCS regulations which state that a review officer shall not subsequently act as a hearing officer in a case that he has reviewed. *See supra* note 3. As we stated in *Robison v. Via,* 821 F.2d 913, 923 (2d Cir.1987), however: "Federal constitutional standards rather than state statutes define the requirements of procedural due process." *See also Russell v. Coughlin,* 910 F.2d at 78 n. 1 (same) (citing *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 540–41, 105 S.Ct. 1487, 1492–93 (1985); *Robison,* 821 F.2d at 922–23).

Russell cites us only to *McKinnon,* 568 F.2d at 934 n. 3, as Second Circuit support for the proposition that McGinnis' dual role in this case constituted a constitutional violation. *McKinnon,* however, simply made a general comment that "an impartial tribunal is a basic component of due process," *id.,* and a more specific statement that it was "tenable" to regard as "inadequate" hearings that included as an adjudicator a corrections official who "may have been involved in the . . . incident" that precipitated the disciplinary hearings. *Id.* *McKinnon* did not address the issue of a hearing officer who previously served as a review officer, and thus does not clearly establish that McGinnis violated due process by presiding over Hearing II. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (requiring prior establishment of asserted constitutional right by precedent sufficiently "particularized" that "in the light of pre-existing law the unlawfulness [of the asserted constitutional violation] must be apparent").

We conclude that in the absence of Supreme Court or Second Circuit precedents prescribing a right to have separate review and hearing officers in a state prison disciplinary hearing, there is no such clearly established right that would deprive McGinnis of qualified immunity. In *Francis,* 891 F.2d at 46, we observed that:

Because of the special characteristics of the prison environment, it is possible for the impartiality of [hearing officers] to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of significant magnitude to violate due process.

Given this statement, and the absence of clear precedent on the issue, a reasonable officer would not have recognized a denial of due process in his serving as hearing officer in a case in which he had previously served as review officer.

We note also our agreement with the district court, *see Russell I*, 774 F.Supp. at 197–98, that Russell produced no evidence of actual bias in this case. The record is to the contrary. In an affidavit, Captain McGinnis stated that: "On an average day I review approximately 25 Inmate Misbehavior Reports." The defendants-appellees also proffered a Rule 3(g) statement to which no response was made, and which therefore is taken as admitted. That statement includes the following relevant assertions:

10. Captain McGinnis was assigned by the Tier II Office at Green Haven as the hearing officer for the [second] Superintendent's Proceeding.... Captain McGinnis was unaware that he had reviewed the Inmate Misbehavior Report prior to plaintiff's initial Superintendent's Proceeding.

....

18. Hearing officers for Superintendent's Proceedings are selected by the Tier II Office at Green Haven on a rotating basis from a list of approximately 15 employees at Green Haven who are authorized to conduct Superintendent's Proceedings. In assigning hearing officers, the Tier III Office is required to make sure that the hearing officer did not witness the incident or have any direct involvement in it, investigate the incident, or act as the Review Officer.

19. This practice also is followed with respect to a rehearing on the same charges. A re-hearing is commenced following a second review of the Inmate Misbehavior Report by a Review Officer. If the documentation is available, the Tier III Office would not intentionally assign a person to act as hearing officer in a re-hearing with respect to a matter in which that person was the Review Officer during the first Superintendent's Proceeding.

Given the number of cases reviewed by McGinnis and the length of time that passed between his review of the initial misbehavior report regarding Russell and Hearing II, McGinnis' assertion that he did not recall previously acting as a review officer in the case, absent evidence to the contrary, is credible. Moreover, the transcript of Hearing II reveals a fairly conducted hearing.

### Conclusion

We affirm *Russell I* and *Russell II*, except with respect to the ruling concerning qualified immunity in *Russell I* that was reversed by this court in *Russell III*.