**Raymond WATSON, Plaintiff,**

v.

**David SMITH, Therapist, Sinovsky, Parole Officer; Boccia, Supervisor Mental Health Unit; and Sullivan, Senior Parole Officer, Defendants.**

**No. 87 Civ. 5596 (LLS).**

United States District Court,
S.D. New York.

March 23, 1988.

Raymond Watson, pro se.

Robert Abrams, Atty. Gen., New York City (Randolph Volkell, of counsel), for defendants.

OPINION AND ORDER

STANTON, District Judge.

Plaintiff Raymond Watson, a state prison inmate, brings this civil rights action under 42 U.S.C. § 1983, claiming that he has been denied parole because of a derogatory mental health report fabricated by defendant David Smith, and that defendants Sullivan and Sinovsky conspiratorially denied him a fair parole hearing by using and relying on his prison disciplinary hearings, which themselves rested on unconstitutionally vague rules. Defendants' motion for summary judgment, on the basis that Watson's parole record contains neither a mental health report nor any reference to a mental health report prepared by Smith, is granted.

FACTS

Watson is serving consecutive sentences for first degree assault, second degree assault, and escape. He has twice been denied parole, in November 1986 and May 1987. In November 1986, he was incarcerated at the Greenhaven Correctional Facility. Defendant Smith is a therapist at Greenhaven who leads a group therapy session of which Watson was once a member. Watson left the group because of a disagreement about South African politics. He claims that Smith then fabricated a mental health report with the malicious intent to deprive him of parole release, and transmitted the report to defendant Sinovsky, a parole officer, who in turn transmitted it to the board. Watson alleges that defendants Boccia and Sullivan, respectively Sinovsky's and Smith's supervisors, knew of their subordinates' actions, and approved or failed to prevent them.

The parole summary prepared for Watson's initial appearance before the parole board in November 1986 states that Watson had a "dismal disciplinary record," and lists numerous disciplinary violations. One such infraction was the possession of two handmade weapons and a book entitled *The Secret War*, which was claimed to describe how to make weapons and how to kill. Although the report states that the infraction resulted in a superintendent's proceed-

ing, Watson avers that the charge was dismissed because the book does not refer to making weapons or how to kill, and had been approved by the Clinton media review committee.

There is no mention of a mental health report in the transcript of Watson's parole hearing. In fact, during the hearing Commissioner Parron asked Watson "why you haven't participated at all in some type of mental hygiene group counselling, either individually or group, should deal with some of your behavior problems?"

The parole board listed as its reasons for denying Watson parole the seriousness of his continued criminal conduct and failure to learn from past lenient treatment by the courts, history of substance abuse (which Watson denies) and numerous and serious incidents of misbehavior. The board recommended participation in mental health evaluation and continued development of educational and vocational skills, and stated that release "would be incompatible with the welfare and protection of society."

Watson was transferred to the Sullivan Correctional Facility before his second appearance before the parole board. The parole summary prepared for his second appearance before the board in May 1987 states that he had remained in the Special Housing Unit continuously since his last appearance, because he had assaulted three corrections officers on December 17, 1986.

The 1987 board denied release because of Watson's "failure to follow the previous Board's directive that you improve upon disciplinary record and involve yourself in positive academic and vocational programs."

The court's *in camera* review of the confidential section of both parole summaries reveals that the only mental health materials in Watson's file were prepared either years before Watson's attendance at David Smith's therapy at Greenhaven, or by an interviewing psychologist, not by Smith.

## DISCUSSION

In his complaint, Watson claims that he was denied parole on the basis of a mental health report fabricated by Smith with the malicious intent to deny him parole release. In his reply to defendants' summary judgment motion, Watson claims that Sullivan and Sinovsky conspired to deny him a fair parole hearing by employing unconstitutionally defective disciplinary proceedings.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court's function "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). However, summary judgment will not be denied unless the unresolved factual issues are material to the claims before the court. *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

In *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983), the court stated, in the context of prisoner's civil rights suits, that

> if the production of all relevant documents fails to add substance to the allegations and if the relevant officials submit affidavits explaining their reasons for the challenged actions, summary judgment dismissing the complaint may be granted but only after the district court determines that oral testimony is unnecessary. If documentary discovery does tend to support the claim or if the documentary record seems unduly sparse, the action may proceed to fuller discovery at the district court's discretion.

### 1. Mental Health Evaluation

Defendants have submitted an affidavit stating that all the relevant documents have been submitted with the motion.

(Volkell Aff. para. 3). In addition, the relevant officials have submitted affidavits. Smith swears that "To the best of my recollection, I was never asked to write, nor did I ever write, any evaluation or other document about plaintiff, for parole or any other purpose." (Smith Aff. para. 3). Sullivan swears that "The Board did not rely, even in part ... on any mental health report." (Sullivan Aff. para. 8). The parole summary does not contain any reference to a mental health report prepared by Smith, or by anyone else during Watson's incarceration at Greenhaven. In addition, no mental health report is mentioned in the transcript of Watson's parole hearing, and it is clear from statements made during the hearing that the board members were under the impression that Watson had never been involved in group therapy. (Sullivan Aff., Exh. B at 10).

Oral testimony is unnecessary in this case. It is clear from the documents and affidavits presented by the defendants that the Board did not rely on any mental health examination prepared by defendant Smith, or on any information provided by Smith. Further discovery would impose an unjustified burden on the state. *Flaherty*, 713 F.2d at 13. Summary judgment is granted on this claim.

### 2. Disciplinary Proceedings

Watson also claims that Sullivan and Sinovsky conspired to deprive him of a fair parole hearing by relying on disciplinary proceedings resting on rules constitutionally void for vagueness. He argues that "It has long been established that prison rules and regulations which are vague are a violation of Due Process." *Powell v. Ward*, 487 F.Supp. 917, 926 (S.D.N.Y.1980); *Laaman v. Helgemoe*, 437 F.Supp. 269, 322 (D.N.H.1977); *Collins v. Hammock*, 52 N.Y.2d 798, 436 N.Y.S.2d 704, 417 N.E.2d 1245 (Ct.App.1980).

However, Watson points to no vagueness in the particular prison rules under which he was disciplined, and makes no argument that the procedures followed in the disciplinary hearings violated the requirements set out in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). His confinement for long periods in the Special Housing Unit was for violent assaults, and he does not articulate any claim that the rules against violent assaults are vague. Rather, he attacks specific instances of misconduct relied on by the Board. He alleges that the use of the incident involving *The Secret War* was malicious because the charge with respect to the book was dismissed, although he does not refer to his alleged possession of two weapons. He also claims that his assault on the three corrections officers was justified because he had been previously assaulted and harassed by the Special Housing Unit Staff.

Neither of these claims indicates a constitutional infirmity in the disciplinary hearings. In light of Watson's long list of infractions, no court would rule that the parole boards should have acted otherwise than as they did. Summary judgment is granted dismissing this claim.

### CONCLUSION

The defendants' motion for summary judgment is granted.

The clerk will enter an order dismissing the complaint.