Faris **ABDUL–MATIYN**, Plaintiff,

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, et al.,** Defendants.

No. 92–CV–321.

United States District Court, N.D. New York.

Dec. 15, 1994.

**1544**

Faris Abdul–Matiyn, pro se.

G. Oliver Koppell, N.Y. State Atty. Gen., for defendants.

### *OPINION*

CHIN, District Judge.[1]

Plaintiff *pro se* Faris Abdul–Matiyn commenced this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights in connection with his confinement at the Eastern Correctional Facility (the "Facility"). Plaintiff's motion for a preliminary injunction has been denied, and pending before the Court is defendants' cross-motion for summary judgment.

### The Facts

#### A. The Incident

Plaintiff is confined in the Sensory Disabled Unit (the "SDU") of the Facility. On May 7, 1990, plaintiff was involved in an incident with another SDU inmate, Juan Morales. Plaintiff contends that Morales

---

**1.** United States District Judge for the Southern District of New York, sitting by designation.

bumped into him. Some pushing, shoving and punching ensued, and both plaintiff and Morales suffered injuries. Plaintiff sustained a broken nose.

## B. *The Disciplinary Proceeding*

On May 9, 1990, as a result of the incident, plaintiff was served with written charges of misbehavior: assault on an inmate, fighting, and possession of a weapon. Plaintiff selected Pauline Lewis (apparently an employee of the Facility) to assist him in preparing a defense. She met with plaintiff and, at his request, interviewed nine inmates and one officer, preparing typed reports of these interviews.

A disciplinary hearing was conducted on May 13 and 16, 1990. Plaintiff testified at the hearing. The witness statements obtained by Ms. Lewis at plaintiff's request were read into the record. Reports of Facility officials and medical records were also made part of the record. Plaintiff also submitted a statement written by education supervisor Fred Hirsch commending plaintiff for his assistance in an unrelated incident.

Plaintiff was told at the hearing that if he needed further assistance to gather more information from witnesses, including individuals Ms. Lewis was unable to contact, the hearing would be adjourned and he would be provided with that assistance. He was also told that he could call witnesses to testify at the hearing, as long as the witnesses had "first hand relevant material." He was also given the opportunity to offer new evidence. (O'Connor Aff., Exh. B at 2–3, 5–6, 15). The transcript of the hearing shows that plaintiff was not prevented from presenting any evidence that he wanted to present.

The hearing officer found plaintiff guilty of fighting and not guilty of assault and possession of a weapon. He imposed a penalty of 90 days cell confinement and loss of privileges, but 60 of the 90 days were suspended pending good conduct for a period of 180 days.

The transcript of the hearing is somewhat garbled, as it jumps back and forth between May 13 and 16, 1990 as the hearing officer at one point apparently mistakenly put the tape in on the wrong side and recorded a "few moments" of testimony on the other side of the tape.[2] The transcript does show plaintiff explaining that Morales bumped into him, then came at him, hitting him. (Exh. B at 5–7). Plaintiff testifies that he did not recall hitting Morales, but he also stated that "if anything I had hit him with something." (Exh. B at 6).

## C. *Plaintiff's Medical Care*

Following the incident on the evening of May 7, 1990, plaintiff was admitted to the prison infirmary, complaining of pain in the left wrist, right eye and nose. X-rays taken the next day showed no abnormalities of the wrist or eye, but they did show a non-displaced fracture of the nasal bone. Plaintiff was examined by Dr. Milicevic on May 9, 1990, and she determined that he could be released from the infirmary, as long as he did not participate in sports. She also ordered that plaintiff be scheduled for a consultation with a plastic surgeon. Plaintiff made no complaints when he was discharged back to his cell on May 9, 1994.

An appointment was made for plaintiff with a plastic surgeon for May 17, 1990, but the appointment was cancelled, apparently by the plastic surgeon. The appointment was rescheduled for July 12, 1990. Plaintiff was examined then, and the plastic surgeon determined that a rhinoplasty should not be performed until at least six months had elapsed without injury to plaintiff. The plastic surgeon saw plaintiff again on February 8, 1991, and determined at that time that plaintiff should simply be given medication.

---

**2.** The tape starts off apparently around 9:56 a.m. on May 13, 1990. (Exh. B at 1). On Page 5, however, the transcript shows the hearing officer stating that it is 1:52 p.m. on May 16, 1990 when the transcript breaks. On page 10 of the transcript, the hearing officer states that the tape ran out on side one, and that the time was 10:27 a.m., May 13, 1990. At that point, plaintiff acknowledges that no discussion occurred off the record, or off the tape. (Exh. B at 10). On page 15, the transcript jumps from what is apparently 10:46 a.m. on May 13th to 1:55 p.m. on May 16th.

Plaintiff has been treated for numerous ailments at the Facility, both by medical staff as well as by outside physicians. While incarcerated at the Facility, plaintiff has been treated or examined for hearing, sinus and nasal, back, thumb and wrist, and eyesight problems or complaints as well as for other more common medical complaints. He has been examined or treated by numerous outside physicians in addition to the plastic surgeon, including at least two audiologists, at least two ear, nose and throat specialists, an optometrist, and an ophthalmologist. He has received x-rays, CAT scans, an EEG, a "visual evoke response" test, and hearing tests, as well as nasal surgery. All of the above care and treatment was provided after the May 7, 1990 incident.

## D. *The Complaint*

In his *pro se* complaint, plaintiff asserts a number of purported constitutional violations that he alleges were committed by the New York State Department of Correctional Services and various employees and officials of the Facility, including the hearing officer (Raymond Smith), the doctor who treated him after the incident (Dr. Raelene Milicevic), another physician (Dr. Jing Guo), the medical records clerk at the Facility (Kim McConnell, who, among other things, arranged plaintiff's numerous trips to outside doctors), and the education supervisor at the Facility (Fred Hirsch).

Plaintiff apparently complains that defendants: (1) failed to protect him from the alleged attack by Morales; (2) failed to provide him with a fair disciplinary hearing; (3) failed to provide him with proper medical care; (4) failed to provide him with nutritional meals that comport with his religious requirements; and (5) retaliated against him for having previously filed a civil rights suit against defendant Hirsch.

During discovery, the defendants who had then been served with process served interrogatories and document requests on plaintiff, asking him to provide details and support for his claims of unconstitutional conduct. Plaintiff responded by serving a document entitled "Plaintiff's Opposition to Defendants' Requests and Interrogatories."

After plaintiff moved for a preliminary injunction, defendants cross-moved for summary judgment. Plaintiff submitted a statement in opposition to the cross-motion, to which he attached certain medical records, articles, and various other documents.

## *Discussion*

### A. **Standards for Summary Judgment**

■ The standards applicable to motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all reasonable inferences against the moving party, there exists a genuine dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. As the Court held in *Anderson*, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 1065 S.Ct. at 2511 (citations omitted).

### B. *Plaintiff's Claims*

#### 1. *Failure to Protect*

■ Plaintiff's claim that Facility officials failed to protect him when he was attacked

by Morales must be dismissed. In his papers in opposition to the cross-motion, plaintiff fails even to address the issue, and he has provided no evidence to show that defendants acted with "deliberate indifference" in their handling of the incident involving Morales. *See Morales v. New York State Department of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not provide cause of action for negligent failure of prison officials to protect an inmate from injury at hands of another inmate).

Plaintiff's unsupported, conclusory statement in his complaint that unnamed officers[3] knew that Morales had threatened plaintiff and yet permitted him to move about freely is insufficient to raise a genuine issue of fact. Plaintiff's own testimony at his disciplinary hearing shows that the incident happened suddenly after Morales bumped into him and plaintiff responded by saying to Morales: "why don't you watch where you're going." (Exh. B at 6). Indeed, plaintiff testified that "it happened so fast." (Exh. B at 7).

No rational trier of fact could conclude from the record before the Court that defendants acted with deliberate indifference toward plaintiff with respect to their handling of the May 7th incident.

### 2. *Disciplinary Hearing*

■ An inmate faced with disciplinary charges has the right to advance written notice of the charges as well as certain rights to call witnesses and present evidence. *Wolff v. McDonnell,* 418 U.S. 539, 563–66, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). The Second Circuit has held that "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng v. Coughlin,* 858 F.2d 889, 897 (2nd Cir.1988).

Plaintiff's claim that he was denied his constitutional rights with respect to his disciplinary hearing must be dismissed, for no rational trier of fact could find on the record before the Court that plaintiff's constitutional rights were violated with respect to the hearing.

Again, plaintiff has failed to provide any evidentiary support for his challenge to the disciplinary hearing. In his opposition to the cross-motion, he states only that the hearing officer "purposefully re-wound" the tape to eliminate the hearing officer's references to defendant Hirsch. The transcript itself, however, shows otherwise.

Although the hearing officer did mishandle the tape, the transcript shows that plaintiff was able to make a statement and offer evidence in his defense. The tape also shows that the hearing officer repeated the testimony that might have been lost and plaintiff agreed that the hearing officer had accurately summarized it. (Exh. B at 15). Although it is possible that a portion of the May 13th testimony was lost (*see* Exh. B at 5–6), at most it was two minutes of testimony. (*Compare* Exh. B at 5 (1:52 p.m.) to 6 (1:54 p.m.). Moreover, the portions of the transcript available for May 13th provide a context that makes it clear that Hirsch was not a subject of discussion at that point in the hearing.

The undisputed evidence shows that plaintiff was given advance written notice of the charges and an opportunity to prepare for the hearing. Ms. Lewis provided plaintiff with substantial assistance; indeed, she interviewed some ten witnesses, asking the questions that plaintiff wanted her to ask, and typed up their statements, which were read into the record at the hearing. The hearing officer also marshaled the evidence, reading the various reports into the record. The hearing officer also advised plaintiff that he could adjourn for purposes of gathering additional evidence and that witnesses with knowledge of relevant facts could be called. The hearing officer gave plaintiff an opportunity to give his side of the story, and he told plaintiff that he could present "new" evidence if he had any.

■ Ultimately, the hearing officer found plaintiff not guilty of the two more serious

---

**3.** *See Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) (plaintiff must show that individual defendant charged was personally involved in alleged unlawful conduct); *Russell v. Coughlin,* 774 F.Supp. 189, 194 (S.D.N.Y.1991).

counts, finding him guilty only on the charge of fighting. That finding was well supported by the evidence, including plaintiff's own testimony, a report of an officer who witnessed the fight, evidence that plaintiff struck Morales with a magnifying glass, and the fact that injuries were sustained by both individuals involved. On this record, plaintiff's conclusory allegations of bias do not create a genuine issue of fact and summary judgment must be granted in favor of defendants on this claim. *See Russell v. Coughlin,* 774 F.Supp. 189, 194–97 (S.D.N.Y.1991); *Lott v. Selsky,* 747 F.Supp. 226, 229–30 (S.D.N.Y. 1990), *aff'd,* 932 F.2d 957 (2d Cir.1991).[4]

### 3. *Medical Care*

Plaintiff's principal claim is based on the medical care he received at the Facility, as he has raised a host of objections to the care and treatment he received at the hands of defendants.

■■■ To prevail on a claim under section 1983 for inadequate medical care, an inmate must show a "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Claims of negligent treatment or medical malpractice or claims based on differences of opinion as to matters of medical judgment are insufficient to state a claim under section 1983. *Estelle,* 429 U.S. at 106–07, 97 S.Ct. at 292–93; *Bryant v. Maffucci,* 923 F.2d 979, 982–83 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state law.").

■■■ Plaintiff complains extensively about the failure of defendants to provide him with darker tinted glasses that he claims to re-

quire because of an eye condition. This is precisely the type of claim that the Supreme Court held to be insufficient in *Estelle:*

> [W]hether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

*Estelle,* 429 U.S. at 107, 97 S.Ct. at 293. Here, defendants' decision not to order the tinted glasses requested by plaintiff does not constitute a constitutional violation, even assuming the decision was wrong.

Moreover, the record shows that plaintiff in fact received extensive care. He was seen by numerous doctors, including an ophthalmologist as well as numerous other specialists. He received numerous tests and procedures as well as surgery. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 292–93.

In his opposition to the cross-motion, plaintiff accuses defendant Milicevic of falsifying documents and making other false and fraudulent statements. The record, however, simply does not support plaintiff's accusations, even with all reasonable inferences drawn in his favor. For example, plaintiff contends that defendant Milicevic falsely states that plaintiff does not want tinted glasses. (Pl. Objections to Mag. Report/Recommendation & Opp. to Def. Cross–Motion at 2) ("Pl. Opp."). In fact, her affidavit states: "Plaintiff was already wearing dark glasses, but he wanted even darker glasses." (Milicevic Aff. ¶ 10).

Plaintiff also accuses her of signing an X-ray requisition and report form to falsely suggest that she was present on May 8, 1990 when the x-ray was taken, but the form itself shows that defendant Milicevic's name was written on the form by someone else to show that the x-ray was "ORDERED BY DR. *Milicevic/G.RN.*" Obviously, she did not have to be present to order the x-ray, as she

---

4. In paragraph 19 of his complaint, plaintiff makes a number of allegations about purported statements made by himself and defendant Smith at the hearing. The hearing transcript shows that these purported statements were not made; indeed, it does not appear from the transcript that plaintiff raised the issue of bias at all. Moreover, but for his contention that the tape was rewound "a little bit back," plaintiff did not contest the accuracy of the transcript in his opposition papers.

could have done that by telephone. Moreover, in her affidavit, defendant Milicevic does not contend that she was present on May 8, 1990; instead, she states that she examined plaintiff on May 9, 1990. (Milicevic Aff. ¶ 3). And although she did not see him until May 9th, he was admitted into the infirmary on May 7th, examined and treated by other medical staff at that time, and kept in the infirmary until he was seen by Dr. Milicevic on May 9th. The medical records show that following the discharge plaintiff was seen by medical staff at the facility again on May 16, 18, June 6, 8, 11, 20, 21, 27, July 13, 18, 30 and on numerous occasions thereafter as well.

Notwithstanding plaintiff's conclusory and unsupported attacks on defendant Milicevic, the record clearly shows that defendants did not act with a deliberate indifference to any serious medical need of plaintiff, and no reasonable jury could find otherwise.

### 4. *Plaintiff's Diet*

In his complaint, plaintiff alleges in conclusory fashion that "defendants have refused to suppl[y] plaintiff a nutritional meal, which is acceptable under plaintiff's religious dietary laws (Islamic dietary laws), causing plaintiff to sustain his life, nutritionally, by purchasing his own foods." (Complaint ¶ 25). Defendants served interrogatories on plaintiff requesting details as to the religious diet claim, but plaintiff refused to answer the interrogatories. Moreover, in his opposition to the cross-motion, plaintiff makes no effort to detail the claim. Hence, summary judgment is granted as to the religious diet claim.[5]

### 5. *Retaliation*

Finally, plaintiff alleges that he has been retaliated against because he filed a prior civil rights suit against defendant Hirsch.

 Section 1983 protects inmates from "otherwise routine administrative deci-

sions ... made in retaliation for the exercise of constitutionally protected rights." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987). Because retaliation claims are "prone to abuse," *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983), a "higher level of detail" is required to support them. *Gill*, 824 F.2d at 194; *see also Flaherty*, 713 F.2d at 13.

 In the present case, defendants have provided documentary discovery as well as responses to interrogatories. The officials in question have now submitted affidavits (with relevant documents attached) explaining their actions. In contrast, plaintiff refused to answer defendants' interrogatories requesting detail as to the retaliation claims.

On the record before the Court, I find that oral testimony is unnecessary. It is clear from the documents and affidavits presented by defendants that they did not make decisions based on the fact that plaintiff might have previously sued defendant Hirsch and no reasonable jury could find that defendants' decisions were made in retaliation for the exercise of plaintiff's constitutional rights. *See Watson v. Smith*, 682 F.Supp. 225, 227 (S.D.N.Y.1988).

Summary judgment is granted on this claim as well.

### C. *Defendants' Immunities*

Even assuming that plaintiff has presented genuine issues of fact as to whether his rights were violated, defendants assert in their motion for summary judgment that as a matter of law they are immune from plaintiff's claims for damages. The defendant prison employees claim a qualified immunity as government officials performing discretionary acts. The Department of Correctional Services claims sovereign immunity under the Eleventh Amendment as a state agency being sued in federal court.

Plaintiff contends that the prison officials vitiated any qualified immunity by violating

---

5. Plaintiff does allege in his opposition papers, however, that although he was prescribed a "bland diet" because of ulcers, he has not been provided with such a diet. (Pl.Opp. at 3). Plaintiff's complaint, however, does not assert a claim based on the Facility's purported failure to pro-

vide him with a "bland diet." To the contrary, the complaint alleges that "plaintiff, for the past nine (9) years has used the funds he made to purchase nourishment that complies with his religious dietary laws." (Complaint ¶ 21).

the United States Constitution and federal law. Furthermore, plaintiff claims the Eleventh Amendment is inapplicable because the State is not a named defendant and the Department of Correctional Services receives federal funding.

### 1. *Qualified Immunity*

 Qualified immunity "shields public officials from liability for their discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Even when a plaintiff's federal rights are well-defined, a defendant may successfully claim qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991) (citations omitted).

The use of summary judgment by government officials claiming qualified immunity is expressly encouraged to reduce the burden of defending insubstantial suits. *See Harlow,* 457 U.S. at 815–16, 102 S.Ct. at 2736–37; *see also Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992) (holding that defendants claiming qualified immunity to § 1983 action were entitled to summary judgment where factual disputes were not material).

 In short, a plaintiff's claims will withstand summary judgment only if he presents some evidence upon which a reasonable fact finder could find (i) that defendants violated well-established federal rights and (ii) that it was not objectively reasonable for defendants to believe that their conduct did not violate those rights.

In the present case, plaintiff has failed to present concrete evidence from which a rational trier of fact could find that defendants violated any of plaintiff's clearly-established federal rights. Even if defendants' alleged conduct did violate such rights there is no reasonable basis for concluding that defendants did not have an objectively reasonable belief that their acts were constitutionally proper.

 First, plaintiff's claim that Facility officials failed to protect him when he was attacked by a fellow inmate does not allege the violation of any clearly established statutory or constitutional right. *See, e.g., Morales,* 842 F.2d at 30 (no claim under § 1983 for negligent protection from fellow inmate).

 Second, even assuming plaintiff's conclusory allegations of retaliation for filing suit and denial of a religiously acceptable diet could implicate clear federal rights, no rational trier of fact could find on the record before the Court that defendants did not have an objectively reasonable belief that their conduct met the requisite constitutional standards.

 Third, while inmates have well-defined rights regarding disciplinary hearings, *see Wolff,* 418 U.S. at 563–66, 94 S.Ct. at 2978–80, plaintiff's own testimony and the clear record of the hearing establish that plaintiff was given the opportunity to exercise his due process rights and there is no evidence supporting a reasonable inference of bias. No reasonable prison official would have believed that the conduct of the disciplinary hearing was unconstitutional.

 Last, applying the appropriate standard of objective reasonableness to plaintiff's medical care claims, *see Hathaway,* at 66, the only rational conclusion is that it was objectively reasonable for defendant medical personnel to believe that their conduct satisfied the constitutional standard of not being "deliberately indifferent to serious medical needs." *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291. Even if plaintiff's numerous complaints about his medical care were well-founded, no reasonable jury could find on this record that defendants knew of and disregarded an excessive risk to plaintiff's health. *See Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994).

Therefore, because plaintiff has failed to present evidence sufficient to raise a genuine issue of fact as to the qualified immunity enjoyed by the defendant government officials, summary judgment is granted on all

claims against the individual defendants for damages.

### 2. *Eleventh Amendment*

 Under the Eleventh Amendment, plaintiffs are barred from bringing certain actions in federal court against the States and their agencies and officials. In *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court interpreted the Eleventh Amendment as affirming that "the fundamental principle of sovereign immunity limits the grant of judicial authority in Article III." *Id.*, 465 U.S. at 98, 104 S.Ct. at 906. The Supreme Court construed the Eleventh Amendment as barring suits in federal court against the States unless they have clearly consented or Congress has unequivocally abrogated the immunity. *Id.*, 465 U.S. at 99, 104 S.Ct. at 907. The Eleventh Amendment bar does not require that a state be named as a defendant, and extends to actions against state agencies and state employees acting in their official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Edelman v. Jordan*, 415 U.S. 651, 663–64, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *see also Delgado v. New York City Dep't of Correction*, 797 F.Supp. 327, 328 (S.D.N.Y. 1992) (holding that under the Eleventh Amendment a prisoner's civil rights suit alleging assaults and denial of medical treatment was barred as against the New York State Department of Correctional Services).

 There is a clear exception, however, to the general principles of state sovereign immunity. The Supremacy Clause and doctrines of federalism dictate that federal courts may not be prevented from granting prospective declaratory or injunctive relief for claims of continuing violations of federal law by the States or their agents. *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985) (*citing Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

 Plaintiff's complaint seeks compensatory and punitive damages as well as declaratory and injunctive relief. The claim for money damages against the Department of Correctional Services falls within the Eleventh Amendment's general bar of actions seeking state funds. *See Farid v. Smith*, 850 F.2d 917, 920–21 (2d Cir.1988); *Dwyer v. Regan*, 777 F.2d 825, 835–36 (2d Cir.1985). The claims for declaratory and injunctive relief are similarly barred, but only to the extent that they seek relief from past violations of federal law. *See Farid*, 850 F.2d at 924 (*citing Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423). Therefore, the Department of Correctional Services is also entitled to summary judgment under the Eleventh Amendment as to all claims except those seeking declaratory and injunctive relief for future violations of federal law. As to the latter claims, however, summary judgment is appropriate for the reasons set forth in the discussion of the merits above.

### *Conclusion*

For all the foregoing reasons, defendants' motion for summary judgment is granted and the complaint is dismissed.