Orson **BROWN**, Plaintiff,

v.

Calvin D. **MORTON**, Warden, Santiago Orellana, Health Services Administrator, Clemmie Cooper, Captain, David Williams, Inmate Systems Manager, and Cornelius Connor, Senior Officer, Metropolitan Detention Center, Brooklyn, Defendants.

No. 95 CV 2881 (SJ).

United States District Court,
E.D. New York.

Jan. 27, 1997.

Orson Brown, F.C.I. Schuylkill, Miners-ville, PA, Pro Se.

Zachary W. Carter, United States Attorney, Eastern District of New York, Brooklyn, NY, Kevin P. Mulry, Assistant U.S. Attorney, for Defendants.

JOHNSON, District Judge:

Before this Court is defendants' motion to dismiss the complaint against them for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for partial summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

Orson Brown ("Brown" or "plaintiff"), appearing *pro se*, brings this action based on events which occurred while he was a pretrial detainee at the Metropolitan Detention Center in Brooklyn, New York ("MDC").

Plaintiff alleges in his complaint that on the morning of May 19, 1995, a fellow inmate named Raymond Glass ("Glass"), without provocation, began throwing plaintiff's laundry on the floor and then attempted to force plaintiff into a secluded storage room. Complaint ¶ IV at 1. At that point, MDC guard Cornelius Connor ("Connor") intervened and sent Glass to the bed area. *Id.* Plaintiff alleges that he then recounted to Connor what had just occurred, and expressed his fears that the incident with Glass was not over and that Glass would attempt to assault him again "in the immediate future." *Id.*

According to the complaint, just twenty minutes later, upon plaintiff's return to the bed area, Glass again approached him and began to punch him and smash his head against the floor. *Id.* Brown alleges that at one point during this assault, Connor was "not more than ten feet" away, but did not intervene to stop the assault, and ignored his cries for help. *Id.*

Plaintiff alleges that after this brutal beating, he further suffered because of inadequate medical attention. Complaint ¶ IV at 2. Specifically, he claims that despite swelling and redness in his eyes, he was not given eye drops for three days; lights were not dimmed in his housing unit; he was not allowed to see an optician for a full week; and his requests for follow-up treatment by an ophthalmologist were ignored. *Id.*

Brown has brought this action against defendants, Calvin D. Morton ("Morton"), San-

tiago Orellana ("Orellana"), Clemmie Cooper ("Cooper"), David Williams ("Williams") and Cornelius Connor (collectively "defendants"), all MDC employees at the time of the events alleged in the complaint, for violating his constitutional rights under the Due Process Clause of the Fifth Amendment. Plaintiff claims that Connor, and therefore his supervisors MDC Warden Morton and MDC Captain Cooper, are liable for Glass' assault on him because Connor failed to prevent the assault, first by failing to enforce MDC regulations which prohibit the use of the wash area during certain hours, and second, by ignoring plaintiff's warning that another attack after the wash area incident was imminent. Plaintiff also claims that Connor, Cooper, and Morton are responsible for the assault because Connor failed to intervene to stop the assault once it had begun.

Additionally, plaintiff claims that Morton, Cooper, and Inmate Systems Manager Williams are liable for damages he sustained from the assault because all three were responsible for inmate Glass' presence in MDC's general population, despite his history of violent conduct.

Finally, plaintiff alleges that Orellana, the MDC health administrator, and Morton, as Orellana's supervisor, failed to provide him with prompt, adequate medical attention and are therefore liable for the further damage that this inadequate attention caused.

For all of these claims, plaintiff requests relief in the form of compensatory and punitive damages, ranging in amounts from one to 49 million dollars. Complaint ¶ V.

Defendants have moved to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative, for partial summary judgment pursuant to Fed.R.Civ.P. 56.

### DISCUSSION

Plaintiff's complaint is interpreted by this Court as an action brought under *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A claim made pursuant to *Bivens* must allege facts showing that the defendants acted under color of federal law to deprive plaintiff of a constitutional right. *Id.* at 397, 91 S.Ct. at 2005; *Barbera v. Smith,* 654 F.Supp. 386, 390 (S.D.N.Y.1987). Federal courts have analogized *Bivens* claims to causes of action brought against state officials pursuant to 42 U.S.C. § 1983, which similarly requires a showing that defendants acted under color of state law to deprive plaintiff of a constitutional right. Courts therefore apply § 1983 cases as precedent for *Bivens* cases. *Butz v. Economou,* 438 U.S. 478, 498–99, 98 S.Ct. 2894, 2906–07, 57 L.Ed.2d 895 (1977); *Barbera v. Smith,* 654 F.Supp. at 390 n. 2 (citing *Black v. United States,* 534 F.2d 524, 528 (2d Cir.1976)).

### I.  *Summary Judgment Standard.*

After conducting discovery, defendants now move in part for summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Eastman Machine Co., Inc. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). No genuine issue exists

> unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

Once the movant has come forward with appropriate support, demonstrating that there is no genuine issue of material fact to be tried, the burden shifts to the nonmoving party to present similar support setting forth specific facts about which a genuine triable issue remains. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511. Mere conclusory allegations will not suffice. Instead, the nonmovant must "bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful." *U.S. v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir.1982) (*per curiam*). Supporting affidavits must be on personal knowledge and "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

In short, the nonmoving party must, by deposition, interrogatory answers, or other documentation allowed under the rule, adduce "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Barnett v. Howaldt,* 757 F.2d 23, 26 (2d Cir.1985).

II. *Claims Based on Defendants' Failure to Protect Plaintiff from Inmate Glass.*

Prison officials clearly have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan,* 511 U.S. 825, 831–35, 114 S.Ct. 1970, 1976–77, 128 L.Ed.2d 811 (1994) (citations omitted). Not every injury suffered by one prisoner at the hands of another, however, translates into constitutional liability for prison officials. *Id.* at 831–33, 114 S.Ct. at 1976.

Because plaintiff was a pretrial detainee at a federal institution at the time of the alleged incidents, his pre-adjudication punishment claims arise under the Due Process Clause of the Fifth Amendment, rather than under the Eighth Amendment. *See City of Revere v. Massachusetts Gen'l Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *Bell v. Wolfish,* 441 U.S. 520, 536 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Bryant v. Maffucci,* 923 F.2d 979, 983 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). In order for plaintiff to succeed on his claim that defendants' failure to protect him violated his due process rights, he must at a minimum show that defendants acted with "gross negligence." *See Bryant v. Maffucci,* 923 F.2d at 983. Although the Supreme Court has applied the "deliberate indifference" standard to claims brought under the Eighth Amendment, *see Farmer v. Brennan,* 511 U.S. at 837–39, 114 S.Ct. at 1979, it remains an open question whether that standard or the standard of "gross negligence" applies under equivalent due process claims. *See, e.g., Bryant v. Maffucci,* 923 F.2d at 983–84; *Bailey v. Tricolla,* 1996 WL 733078 at *5 n. 6 (E.D.N.Y. Dec. 11, 1996); *Dresdner v. Brockenton,* 1996 WL 452275 at *2 (S.D.N.Y. Aug. 8, 1996). Because plaintiff does not succeed in most of his claims under even the lesser "gross negligence" standard, this Court need not decide which standard is generally applicable.[1]

The Second Circuit has determined that a plaintiff makes a showing of gross negligence if he or she establishes that the defendants had "reason to know of facts creating a high degree of risk of physical harm ... and deliberately act[ed] or fail[ed] to act in conscious disregard or indifference to that risk." *Bryant v. Maffucci,* 923 F.2d at 985 (citation omitted).

Bearing this standard in mind, the Court now turns to the individual claims plaintiff asserts regarding defendants' failure to protect him from Glass.

A. *Claims against Connor, Cooper, and Morton for Connor's Failure to Enforce Wash Area Regulations.*

■ Plaintiff claims that defendants Connor, Cooper, and Morton are liable to him for

---

1. Plaintiff's claim regarding defendants' failure to house Glass separately does survive defendants' summary judgment motion. Defendants, however, fail to meet their burden as movants even under the "deliberate indifference" standard which is more favorable to them.

Connor's failure to enforce MDC regulations regarding the wash area operating hours. The government argues that, even assuming the regulation was not enforced, "such conduct does not implicate any constitutional right and cannot rise to a constitutional violation." Defendants' Memorandum of Law in Support of their Motion to Dismiss, or, in the Alternative, for Summary Judgment at 11 (citing *Bagguley v. Barr*, 893 F.Supp. 967, 971 (D.Kan.1995)).

According to this *pro se* complaint the close and sympathetic reading to which it is entitled, *see Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), this Court concludes that plaintiff's claim is based on the argument that if Connor had properly enforced the wash area regulations, then Glass would not have been provoked to initially approach plaintiff in the wash area and consequently would not have attacked plaintiff twenty minutes later in the bed area. Based on this somewhat indirect reasoning, plaintiff claims that Connor's failure to enforce the regulations resulted in the second, more serious assault, and therefore resulted in the violation of his due process rights.

Plaintiff still fails to state a claim upon which relief can be granted, however, because even if Connor did not enforce the regulation, Brown fails to allege any facts which might establish that the nonenforcement of the wash area hours could possibly have been considered to create a risk of harm to inmates. *See Bryant v. Maffucci*, 923 F.2d at 985. Defendant Connor could not have anticipated that keeping the wash area open would, in and of itself, create any danger of assault to an MDC inmate. For this reason, plaintiff's claim regarding the nonenforcement of the wash area regulation is dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

B. *Claims against Morton, Williams, and Cooper for Placing Glass in MDC's General Population.*

■ Plaintiff claims that defendants Morton, Williams, and Cooper are liable to him for the damages he suffered from the assault by Glass because they were aware or should have been aware of Glass' violent history and accordingly should not have placed Glass in the general MDC population. In particular, plaintiff alleges that "Mr. Glass ... was known ... to be pre-disposed to extremely violent conduct." Complaint ¶ IV at 2–3. Plaintiff also specifically alleges that prison officials knew of Mr. Glass' violent predisposition, and failed to respond to this information. Complaint ¶ IV at 3.

Although defendants move for summary judgment on this claim, they fail to identify any portion of the record that might support their motion. After surveying the various discovery submissions on its own, however, this Court notes that MDC records indicate that Glass was first taken into custody on April 5, 1995, and that he had not been involved in any altercation prior to the May 19th incident with plaintiff. Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories and Request to Produce at 6 (Response Nos. 3, 5). These records, considered alone, would indicate that there was no reason for defendants to ever consider Glass a risk of harm to his fellow inmates.

Defendants accordingly move for summary judgment based on its assertion that "[p]laintiff does not ... point to any specific instance or circumstance that would have made prison officials aware that Glass 'should have been known to be too violent an individual to be placed in the general population.'" Defendants' Reply Memorandum at 3 (quoting Plaintiff's Memorandum at 5).

Plaintiff, however, has declared under oath that he had personal knowledge of an attack by Glass on another inmate, and that he had spoken with two MDC staff members, surnamed "Zapada" and "Martinez," who indicated that Glass had assaulted or attempted to assault them. Brown Decl. ¶ 9. Plaintiff fails to state whether any of these assaults took place prior to the May 19, 1995 incident, or whether the circumstances surrounding them would indicate that Glass did in fact present a high or substantial risk of harm to fellow inmates. Given defendants' somewhat lax approach in pointing to evidence supporting its own motion, and the requirement that this Court view the evidence in the light most

favorable to the nonmoving party, however, this Court concludes that a material issue of fact remains on this claim. Defendants' motion for summary judgment on this claim is therefore denied without prejudice.[2]

### C. Claims against Connor, Cooper, and Morton for Connor's Failure to Prevent, and to Intervene and Stop the Assault.

Plaintiff argues that defendant Officer Connor and his supervisors, defendants Cooper and Morton, are liable to him for his injuries because defendant Connor failed to heed his warning in the wash area that Glass would shortly attack him again, and because Connor subsequently failed to intervene and stop the assault in the bed area once it began.

#### 1. Claims against Cooper and Morton.

■ Defendants argue in part that these claims, as they are alleged against defendants Warden Morton and MDC Captain Cooper, fail to state a claim upon which relief can be granted. This Court agrees. A federal official may not be held vicariously liable in a Bivens action for the acts of subordinates under the doctrine of respondeat superior. That is, supervisory officials named as defendants cannot be held accountable for the actions of their subordinates unless they were personally involved in, had knowledge of, or approved of the alleged unconstitutional acts. Rizzo v. Goode, 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). Therefore, absent some personal involvement by defendants in the allegedly unlawful conduct of subordinates, they are not held liable

for violations of plaintiff's constitutional rights. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

Plaintiff's claims that Officer Connor failed to prevent and then to stop the assault fail to include any allegations that either Morton or Cooper had any personal involvement in the incident, or for that matter knew or approved of Connor's actions.[3] Indeed, plaintiff's allegations against Morton and Cooper with regard to this claim specifically include a respondeat superior theory of liability.[4] Because plaintiff fails to allege any basis upon which this Court might find defendants Morton and Cooper involved in, and therefore liable for Connor's actions, these claims are dismissed for failure to state a claim upon which relief can be granted.

#### 2. Claims against Connor.

Defendant does not explicitly address plaintiff's claim against Connor that he failed to prevent the assault by failing to act on plaintiff's warning in the wash area that Glass would "imminently" attack him again.[5] Additionally, defendant has withdrawn his motion for summary judgment regarding the claim that he failed to intervene and stop the assault. Defendants' Reply Memorandum at 1–2. For these reasons, these two claims against defendant Connor survive defendants' motion.

### III. Claims against Defendants Morton and Orellana for Failure to Provide Adequate Medical Care.

■ Plaintiff argues that he received inadequate medical care by defendant Orellana,

---

**2.** Although Morton, Williams, and Connor all state that they had no personal involvement in the assignment of Glass to MDC's general population, Morton Decl. ¶ 3; Cooper Decl. ¶ 3; Williams Decl. ¶ 3, that fact alone does not necessarily defeat their liability on this claim. If they had become aware that Glass was dangerous prior to May 19th and failed to act by removing him from the general population, they might still be found to have deliberately indifferent to a substantial or high risk of harm to plaintiff.

**3.** Given the approximate half hour in which all of the events regarding these claims took place, Connor may not even have had the time to make his supervisors aware of his actions or decisions.

**4.** Plaintiff alleges that Morton is liable "for the actions of his subordinate staff member [Connor]," Complaint ¶ IV at 4 ¶ 4, and that Cooper is liable for "the actions of staff under his ... management, in the person of [Connor]." Complaint ¶ IV at 5 ¶ 9.

**5.** Although defendant denies that plaintiff ever communicated his safety concerns to him, plaintiff and fellow inmate Peter Shue dispute that assertion. Compare Connor Decl. ¶ 5 with Brown Decl. ¶ 5 and Shue Decl. ¶ 8.

who is MDC's Health Administrator, and that defendant Morton did nothing to correct this problem although plaintiff made numerous complaints to him. Brown's allegations include that he was not given eye drops for three days; lights were not dimmed in his housing unit; he was not allowed to see an optician for a full week; and his requests for follow-up treatment by an ophthalmologist were ignored. Complaint ¶ IV at 2. Plaintiff summarizes that "[t]he lack of immediate and adequate treatment ... constitutes more than just negligence. The fact that treatment was needed was communicated repeatedly to defendants Calvin D. Morton and Santiago Orellana, yet non-responsive was the conduct these defendants chose to show: conduct indicative of deliberate disregard." Plaintiff's Memorandum in Opposition to Defendant's Motion at 9 ("Pl. Memo").

The appropriate standard for a pretrial detainee's claim of a violation under the Due Process Clause with respect to medical care remains unsettled. *See, e.g., Dresdner v. Brockenton,* 1996 WL 452275 at *2 (S.D.N.Y. Aug. 8, 1996). All courts agree, however, that more than mere negligence is required to state a constitutional claim. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 106–07, 97 S.Ct. 285, 292–93, 50 L.Ed.2d 251 (1976). A challenge to a decision based on medical judgment does not implicate a constitutional violation but constitutes, at most, a medical malpractice claim which is not cognizable in a federal action. *Id.; Arroyo v. Schaefer,* 548 F.2d 47, 49–50 (2d Cir.1977); *Church v. Hegstrom,* 416 F.2d 449, 451 (2d Cir.1969). There is no right to the treatment of one's choice, *Harding v. Kuhlmann,* 588 F.Supp. 1315, 1317 n. 8 (S.D.N.Y.1984) (citing *Layne v. Vinzant,* 657 F.2d 468, 473 (1st Cir.1981)), *aff'd,* 762 F.2d 990 (2d Cir.1985).

Defendants argue that even when the facts are construed in the light most favorable to plaintiff, they are insufficient to show any negligence on the part of defendants, much less gross negligence. The altercation between plaintiff and inmate Glass occurred on May 19, 1995 at 5:30 a.m., and plaintiff was seen by medical personnel at 5:35 a.m. Orellana Decl. ¶ 5; Defs.Decls. Ex. A ("Inmate Injury Assessment and Follow-up"). Ac-

cording to medical records filled out at the time of this first exam, plaintiff was diagnosed, his wounds were cleaned and covered, and he was given ice compresses and pain killers. Orellana Decl. ¶ 5; Defs.Decls. Ex. A ("Inmate Injury Assessment and Follow-up"). Thereafter, plaintiff was seen by medical personnel on eleven occasions over the following six months. Defs.Decls. Ex. A ("Chronological Record of Medical Care").

Plaintiff was evaluated and treated by a retina specialist, an ophthalmologist, and an optometrist. Orellana Decl. ¶¶ 8–10. On September 1, 1995, plaintiff was examined for a second time by an optometrist, who conducted a visual acuity test with normal results. An examination by the ophthalmologist on September 4, 1995, yielded normal results, and it indicated that the trauma to the left eye had been resolved. Orellana Decl. ¶¶ 12–13. On September 29, it was noted that plaintiff had been evaluated by a retina specialist and plaintiff's retina was found to be stable. Orellana Decl. ¶ 14. Plaintiff was again evaluated by the ophthalmologist in December 1995, but results of the examination were normal and therefore no further treatment was recommended. Orellana Decl. ¶ 16.

Plaintiff's only response to this detailed account of his medical treatment is that he was not treated promptly despite his numerous complaints and that he currently "suffers from episodes of flashing light in his left eye." Pl. Memo at 10. Plaintiff, however, does not state a constitutional claim when he merely disagrees with the treatment he has received. *Abdul–Matiyn v. New York State Department of Correctional Services,* 871 F.Supp. 1542, 1548 (N.D.N.Y.1994) (decision not to order tinted glasses does not constitute a constitutional violation, even assuming decision was wrong), *aff'd,* 66 F.3d 309 (2d Cir.1995); *see Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")

Because defendants present extensive evidence that plaintiff was given reasonable and prompt medical attention and because plaintiff fails to rebut this evidence with anything more than his subjective claims that he disagrees with the treatment that he has been given, this Court finds that there is no triable issue of fact regarding plaintiff's claim that his due process rights were violated because of the medical attention he received.

### CONCLUSION

For the reasons stated herein, defendants' motion to dismiss the complaint for failure to state a claim, or in the alternative, for partial summary judgment, is granted in part and denied in part. Plaintiff's claims against defendants Morton, Williams, and Cooper for failing to remove Glass from MDC's general population, and his claims against Connor for his failure to prevent and then to stop the assault survive defendants' motion.

SO ORDERED.